## MOUND CITY CONSTRUCTION COMPANY, Respondent, v. FANNIE F. MACGURN et al., Appellants.

### St. Louis Court of Appeals, December 23, 1902.

Special Assessments: PUBLIC IMPROVEMENTS: ADJACENT PROPERTY: LIMIT OF ASSESSMENT: CHARTER: CONSTRUCTION: STATUTORY CONSTRUCTION. By the. charter of St. Louis of 1876, "adjacent property" is made the subject of special assessments for improvements on public streets. Article 6, section 18, provides that, whenever special taxes to be assessed against "any property" shall amount to more than twenty-five per cent of the assessed value of said property, the excess over twenty-five per cent shall be paid out of the general revenue. General revenue laws of 1872, section 8, in force at the time of the adoption of the charter provided that the term "real property" or "lot," whenever used in the act, should include all improvements thereon: *Held*, that since the general law for assessment, to which the charter refers, makes a unit of the lot and its improvements, and since exemption privileges are to be strictly construed, the assessed valuation of the "adjacent property," beyond twenty-five per cent of which the special taxation might not go, included both land and improvements.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Daniel Dillon* for appellants.

(1)    There is but one question in this case, and
that arises on the pleadings, and admitted facts set out
in a stipulation filed in the trial court.   Section 18,
article 6, of the charter of the city of St. Louis pro-
vides, in substance, that the lots abutting a street shall
not be charged for the construction of such street in
excess of twenty-five per cent of the assessed value of
said property, calculating a depth of such property to
150 feet.    And the question to be determined in this
case is whether or not, in determining the amount of
twenty-five per cent. of the assessed value of any lot,
the value of the building on the lot is to be taken into
account or considered.    (2)    The injustice of taking
the improvements into account for a purpose of this
kind is clearly stated in Snow v. Fitchburg, 136 Mass.
183, where this language is used:   "It would be mani-
festly unjust in making assessment for a sewer, to value
a lot worth $500 with a house on it worth $5,000 at
$5,500, and to value an adjoining lot of the same size
and value, but vacant, at $500, when within a few
months the owner of the vacant lot might build a house
upon it of greater value than the house on the adjoining
lot and require and enjoy equal facilities for draining."
This language is equally applicable to the construction
of a street, where each lotowner would have the same
use and benefit of the street after it was constructed.
Brewing v. Springfield, 97 Mass. 152; City of Boston
v. Shawl, 1 Met. 138; Dovner v. Boston, 7 Cush. 281;
Cooley on Taxation (2 Ed.), 649; 25 Am. and Eng.
Ency. of Law, p. 526.

*George W. Lubke* for respondent.

(1)    Whatever doubt there might be on this ques-
tion is settled by the acts of the General Assembly of
Missouri.    It is provided by section 8, of the act ap-
proved March 30, 1872, (Laws 1872, p. 85) and by sec-
tion 1, of the act approved, March 15, 1883, (amending
section 6664, Revised Statutes 1879) Laws 1883, p. 135,
as follows:   "The term 'real property,' 'real estate,'

'land' or 'lot' wherever used in this chapter [the chapter here referred to is as to the assessment of the revenue] shall be held to mean and include not only the land itself, whether laid out in town or city lots or otherwise, with all things contained therein, but also all buildings, structures and improvements and other permanent fixtures of whatsoever kind thereon, all shot-towers and all machinery connected therewith, all gristmills, sawmills (except portable mills of every description), oil wells, tobacco, hemp and cotton factories, tobacco stemmeries, rope-walks, manufactories of iron, nails, glass, clocks, and all other property belonging to manufactories of whatever kind, all wool-carding machines, all distilleries, breweries, all tanneries, all iron, copper, brass or other foundries, and all rights and privileges belonging, or in anywise pertaining thereto, except where the same may be otherwise denominated by this chapter," etc.

BARCLAY, J.—We adopt the statement submitted here by the able representative of defendants, appellants, which is an entirely fair presentation of the facts on which this appeal must be decided, as follows:

The plaintiff's cause of action is based on a special taxbill issued under the provisions of the charter of the city of St. Louis.

The petition alleged that defendants were owners of a lot of ground in the city of St. Louis, fronting forty feet on Maple avenue, and that an ordinance of the municipal assembly of said city was passed, providing for the construction of the street in front of this property, and that in pursuance to said ordinance a contract was let to plaintiff to construct said street, and that said street was constructed in accordance with said contract, and that when the work was completed there was assessed against said lot of defendants, as its part of said costs, $691.49, for which a special taxbill was issued against said lot; that payment of said bill was demanded on January 11, 1899; and that said lot of ground was assessed for general taxation in the years

1897 and 1898 at $4,200. The prayer was for judgment for $691.49 with interest at the rate of fifteen per cent per annum from January 11, 1899, and that the same be decreed a lien on said lot. In the amended answer defendants admitted that they were the owners of said lot of ground as alleged in the petition. This answer then alleged that in the years 1897 and 1898 said lot of ground was assessed for general taxation at $1,000, and the improvements on same consisting of a house or building, was assessed at $3,200, and that under the provisions of the charter of the city of St. Louis, said lot of ground could not be charged with any lien for the construction of said street for any sum exceeding twenty-five per cent on the value of said ground, as assessed and valued for general taxation, and that the value of the buildings on said lot could not be considered or taken into account in determining the assessed value of said lot for the purpose of ascertaining the amount of said twenty-five per cent. The answer further alleged that at the time of and before demand of payment of said bill defendants had tendered to plaintiff $250 in payment of said bill, which was refused, and that defendants have ever been ready to pay said $250, and now bring it into court and tender it to plaintiff.

The reply admitted that, for the years 1897 and 1898, the assessments of said lots of ground for general taxation showed an aggregate assessment of $4,200, made up of $1,000 as the value of the ground, and $3,200 as the value of the improvements. And that, on November 11, 1899, defendants tendered plaintiff $250 in payment of said special taxbill. On February 24, 1902, a stipulation was filed submitting the case on said pleadings, and agreeing that the additional facts stated in said reply were true. On June 20, 1902, and during the June term, 1902, of said court, the court rendered a final judgment for $1,048.49, and making the same a special tax lien on said lot. Within four days thereafter, and during the said June term, defendants

filed a motion for a new trial, for these reasons, among others: First, that under the pleadings and said stipulation, the court should have found and decided that said lot of ground mentioned in the petition could not have been assessed or charged with any lien for said construction of Hamilton avenue in any sum in excess of $250. And that, under the pleadings and said stipulation, the findings of the court were erroneous and unwarranted, and contrary to law. On July 15. 1902. and during said June term of said court. the court overruled said motion for a new trial and defendants then and there duly excepted. And, on said July 15. the circuit court granted defendants an appeal to the St. Louis Court of Appeals.

The appeal was afterwards perfected.

The only question to be determined, as tersely summarized by the learned counsel for appellants, is, "whether or not, in determining the amount of the twenty-five per cent of the assessed value of any lot, the value of the building on the lot is to be taken into account or considered."

1. The principal parts of the written law which appear to bear upon the facts in judgment are the following:

Section 18 of article 6 of the charter of 1876 of the city of St. Louis provides:

"Whenever the estimated special taxes to be assessed against any property shall in the aggregate amount to more than twenty-five per cent of the assessed value of said property, calculating a depth to such property of one hundred and fifty feet, then the assembly shall provide out of the general revenue for the payment of the amount in excess of the said twenty-five per cent."

Section 25 of the same article of the St. Louis charter declares:

"Sec. 25. Said taxbill shall be and become a lien on the property charged therewith, and may be collected of the owner of the land, in the name of and by the

contractor, as any other claim in any court of competent jurisdiction, with interest," etc. (R. S. 1899, p. 2513, sec. 25).

General revenue law of 1872 (Laws 1872, p. 85):

"Sec. 8. The term 'real property,' 'real estate,' 'land,' or 'lot,' wherever used in this act, shall be held to mean and include not only the land itself, whether laid out in town or city lots or otherwise, with all things contained therein, but also all buildings, structures and improvements and other permanent fixtures, of whatever kind thereon, and all rights and privileges belonging or in anywise pertaining thereto, except where the same may be otherwise denominated by this act."

The statute law in force when the special tax here in question was levied is substantially as it was in 1872, so far as it bears upon the issues of the case at bar. R. S. 1899, sec. 9123.

The charter of St. Louis went into operation in 1876, and the law of 1872 above quoted as to assessments of real property was then in force.

1. The substantial question before this court is, what property was intended by the language which we find in section 18 of the sixth article of the St. Louis charter of 1876, forbidding the assessment of special taxes against "any property" for adjacent improvements beyond an amount equal to "twenty-five per cent of the assessed value of said property?" Defendants contend that the word "property," means the land alone and does not include any building thereon.

It can not be denied (and it is conceded by the learned counsel for appellants) that the word "property" often includes buildings thereon, according to the definition of that word by Worcester, Webster and Bouvier (Rawle's Ed.) and that the term "real property" includes not merely land but whatever is permanently affixed thereto. The contention of appellants is that the term "property" was not intended to possess so wide a meaning in the connection in which it appears

in that part of the charter which must now be construed.

We think, however, that the language of that section can not be properly severed from the terms of the General Revenue Act of 1872, above quoted, which was part of the law of Missouri when the charter of St. Louis of 1876 was adopted. For the purposes of general taxation the land and the buildings thereon are treated by our law as a unit. It matters not that by custom in the city of St. Louis the assessor separately mentions the value of the improvements. The taxation itself is upon the lot together with the permanent structures thereon, despite the separate statement of the elements which go to make up the final result of the assessment. Moreover, the reason and spirit of the provisions limiting special taxes appear to us to require the entire permanent realty to be estimated in apportioning the special taxes for adjacent improvements.

The precise words to be interpreted are "adjacent property." They are used to point out the tax assessment, which shall form the basis of calculation of the twenty-five per cent limit beyond which the private owner shall not be taxed, at any one time, for improvements on the neighboring public street. Undoubtedly there is much justice in the argument of the court in Snow v. Fitchburg, 136 Mass. 183, which appellants invoke to show that the land without the buildings should alone be taken into account in fixing the high-water mark of a special taxbill. But we think that the condition of our own State law, at the time when the charter of St. Louis was adopted in 1876, reveals the purpose to establish a different rule from that declared in the Massachusetts decision cited.

It must not be overlooked that the words which come under construction in the present case are simply employed to define the limit to which the particular taxation shall go. The record does not show how the special tax was apportioned. As the bill itself, however, is prima facie evidence of liability (R. S. 1899,

p. 2513, sec. 25) we must assume that the mode of assessment was correct in so far as it has not been challenged.   But the method in use has been described in the Supreme Court reports and is well known as the "front-foot" rule.   Farrar v. St. Louis, 80 Mo. 393. By that rule the total cost is ascertained as well as the total frontage of the property chargeable with the special tax, then the former item is divided by the number of feet of frontage and the rate per foot is thus ascertained; each lot is then assessed by multiplying the rate per foot of cost by the front feet it exhibits, and the total is the assessment against each lot.   The twenty-five per cent limit applies to each lot, and not to the aggregate of the assessments.   Allen v. Krenning, 23 Mo. 561.   The front-foot rule does not take account of anything but frontage and in support of the result reached in the trial court we should if necessary assume that it was applied in the case at bar, as we doubt not it was.   The cost of the improvement should be taken to have been apportioned without regard to the buildings on any lot; but when it comes to determine the maximum tax to be borne by any one piece, the assessed value for general taxation (including the buildings thereon, which must for that purpose be included) is considered, and if the aggregate amount assessed against any particular property is more than twenty-five per cent of that assessed value (as intended by the charter) "then the assembly shall provide out of the general revenue for the payment of the amount in excess of said twenty-five per cent."   R. S. 1899, p. 2512, sec. 18.   The inclusion, therefore, of the value of the buildings has nothing to do with the question of apportionment of the special tax, except to define the limit which the tax may reach, or, in other words, to ascertain what part of the tax, regularly chargeable against a particular lot, shall be borne by the city.   The twenty-five per cent limitation can not have the effect to increase the tax legitimately assessable against any one lot according to the "front-foot" rule.

The clause under construction is substantially a provision in the nature of an exemption and it should be strictly construed in favor of the taxing power. Allen v. Krenning, 23 Mo. App. (St. L.) 561.

It can not be said that the construction of the words "adjacent property" in the section of the charter under discussion is entirely free of doubt. The able and ingenious argument of counsel herein leading to a conclusion different from our own has much persuasive force. But when we notice that the general law for assessment of realty (to which the charter obviously refers) makes a unit of the lot and the building thereon, it seems that there is no just alternative but to treat them as a unit in ascertaining the proper limit of the peculiar exemption from special taxation which is here in view.

The judgment is affirmed. *Bland, P. J.*, concurs; *Goode, J.*, not sitting.