STATE of Missouri ex rel. Jesse E. SMITH, County Collector of Greene County, Relator,

and

Pleasant View Reorganized School District No. 1 of Greene County, Missouri, Willard Reorganized School District No. 2 of Greene County, Missouri, Fair Grove Reorganized School District No. 10 of Greene County, Missouri, Strafford Reorganized School District No. 6 of Greene County, Missouri, Bolivar Road District No. 104 of Greene County, Missouri, the Greene County Library District, the County of Greene, and the State of Missouri, Respondents,

v.

CITY OF SPRINGFIELD, Missouri, a Municipal Corporation, Springfield City Water Company, a Corporation, Appellants,

and

Springfield Reorganized School District No. 12 of Greene County, Missouri, (Non-appealing) Defendant.

No. 49424.

Supreme Court of Missouri,

En Banc.

Jan. 13, 1964.

Rehearing Denied Feb. 10, 1964.

Neale, Newman, Bradshaw, Freeman & Neale, Charles F. Newman, O. J. Taylor, Springfield, for appellant, Springfield City Water Co.

J. Weston Miller, Mayte B. Hardie, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for City of Springfield.

Stewart, Reid & Turner, A. Ronald Stewart, Springfield, Don Burrell, Pros. Atty. of Greene County, Springfield, for respondents.

LEEDY, Judge.

In 1957 City of Springfield (hereinafter referred to as City) acquired by purchase from Springfield Water Company, a corporation (hereinafter called Water Company), the latter's waterworks properties and plant, including all lands and improvements thereon. The present controversy arises out of certain provisions of the contract under which said purchase and sale was effectuated, particularly paragraph IX thereof having to do with the ad valorem taxes levied and assessed on said properties for the year 1957, the critical provisions of which are, "The total purchase price payable, after all adjustments and additions, by the City shall be reduced by [a certain proportionate amount of the ad valorem taxes for said year, now concededly 363/365ths thereof, or, in amount, $204,-037.92] and the City shall discharge all liability for the whole of the year's ad valorem taxes and hold Water Company harmless therefrom. All other taxes it may owe shall be paid by Water Company." In closing the sale, City's purchase price was actually reduced, pursuant to said paragraph, in the sum of $204,037.92, but City did not then or at any time thereafter pay any of such ad valorem taxes, and this action was filed upon refusal of plaintiffs' demand upon City and Water Company for the payment of the aforesaid 1957 ad valorem taxes.

The action was brought in eight counts (Count VIII being for declaratory relief) seeking judgment against City alone to recover the amount of said ad valorem taxes. Plaintiffs named in the petition, in addition to the State itself and the State at the relation of the county collector, are political subdivisions or governmental units to which the ad valorem taxes just mentioned were allocable. Another such unit is City itself, although, of course, it is not a party plaintiff. For convenience these multiple parties plaintiff will generally be referred to in the singular, or as collector. Still another unit, Springfield Reorganized School District No. 12 of Greene County, allegedly refused to join as a party plaintiff, and for that reason was joined as a party defendant. It filed no answer, however, and did not appear. No money judgment against Water Company was sought, but it was joined as a party defendant because of its supposed interest in said sum of $204,-037.92, which allegedly continues until said sum or fund is applied to the payment of said 1957 ad valorem taxes. Water Company did, however, file a cross-claim against City by which it sought to recover the amount of the aforesaid taxes so deducted and withheld from the purchase price, and not paid by City. City, by appropriate pleadings, denied liability either to plaintiffs or to Water Company, sought declaratory

relief against plaintiffs, and prayed that it be discharged.

The cause was heard in the first instance before the late Honorable Warren L. White, a retired judge of the Greene County Circuit Court, who was called by this (the Supreme) court for temporary duty as Special Commissioner in said cause, pursuant to § 476.010 et seq., RSMo and V.A.M.S., and Rule 11.07, V.A.M.R. It was stipulated that the evidence to be taken and the issues to be tried at the hearing before Judge White be limited to plaintiffs' cause of action against City, it being understood and agreed that Water Company would not be entitled to recover on its cross-claim against City if judgment be rendered for plaintiffs, and with the further understanding that the hearing would be later reopened for the taking of evidence with respect to Water Company's cross-claim against City if the Special Commissioner did not find for plaintiffs against defendant City.

In accordance with the findings and conclusions of the Special Commissioner (as amended by the circuit court), final judgment was entered (a) in favor of plaintiff county collector against City of Springfield on Count II of the petition in the principal sum of $204,037.92 plus interest thereon from a certain date, making a total of $254,877.38; (b) making certain declarations under Count VIII, as sought by plaintiffs; (c) dismissing Counts I, III, IV, V, VI and VII of the petition; and (d) dismissing Water Company's cross-claim, but without prejudice to the reinstatement thereof if the judgment in favor of plaintiffs against City be reversed. Both City and Water Company have appealed. While Water Company has filed a brief (largely a defensive move), there is, in fact, no real controversy here except as between plaintiff collector and City, this for the reason that Water Company's cross-claim against City is concededly untenable unless and until it be adjudged that City is not liable for the amount of said taxes. Nor are the facts in dispute, and the determinative question is purely one of law. Practically all of the evidence in the case was either documentary, or consisted of stipulated facts (except those concerning which City made certain offers of proof). In our statement which follows, some of the facts thus stipulated will be paraphrased, and others quoted but without so indicating in either instance.

The contract in question by which City agreed to purchase and Water Company agreed to sell the waterworks properties and waterworks plant was entered into February 19, 1957. By its terms the base purchase price was fixed at Nineteen Million Dollars "adjusted as hereinafter provided for and plus amounts to be computed for specific assets as hereinafter provided for." (To be so adjusted at the time of consummation of the sale, and by such factors as plant additions, plant retirement, customer deposits, payrolls, bills receivable, bills payable, and various other matters not here relevant.) Such purchase and sale was, however, made contingent on (1) the authorization by the voters of City to make such purchase, and for the creation, issuance and sale of water revenue bonds requisite for that purpose, (2) consent and approval of Public Service Commission of Missouri for such sale and purchase, and (3) the ability of City to sell its revenue bonds before the final closing date, and "at such rate of interest as will permit the liquidation thereof from the future earnings of such water utility system." These conditions were met and fulfilled, and the purchase and sale was closed on December 30, 1957, upon which date Water Company conveyed to City, and City accepted and took title to all the real and personal property owned by Water Company in Greene County, Missouri.

Paragraph VIII of the contract provides that the properties and assets " * * * shall be transferred and conveyed to City at the time of closing, free and clear of all liabilities and encumbrances of every kind whatsoever, and Water Company shall pay and discharge any and all of its debts and

liabilities that are or might become a lien, charge or encumbrance against the properties transferred to City as of the date of closing or make provision therefor satisfactory to City, excepting only the following: (a) * * * Customers' Deposits [water] held by Water Company," which, plus interest thereon, were to be paid over to City "to date of closing, and City shall assume all liability for such Customers' Deposits; (b) Water Company shall pay to City Fifty per cent (50%) of the amount of the account for Customers' Advances for Construction as of the date of closing, and City shall assume all liabilities for refunds that may become due upon said Customers' Advances for Construction * * *."

Paragraph IX provides that the ad valorem taxes assessed against Water Company for 1957 (or the year in which consummation would occur) shall be determined, then specifies several methods therefor (as affected by the time of the tax year at which such determination is sought to be made, and the availability or not of certain relevant data), following which are the critical provisions giving rise to the present controversy, viz.: "The total purchase price payable, after all adjustments and additions, by the City shall be reduced by that amount that equals that proportion of the annual ad valorem tax that the number of days that have elapsed in the year up to and including the date of closing is proportional to the whole of the calendar year, and the City shall discharge all liability for the whole of the year's ad valorem taxes and hold Water Company harmless therefrom. All other taxes it may owe shall be paid by Water Company."

By paragraph XI Water Company agreed to execute such necessary instruments of conveyance or assignment as might be required for the transfer of the properties, "same to be transferred free and clear of all liens, encumbrances and claims, excepting only as to those liabilities hereinabove specifically agreed upon to be assumed by the City."

Paragraph XII provided, "It is understood that the earliest closing of this sale and purchase that is practicable is, and will be, of benefit to both parties." It further provided that the closing date "shall be not later than the First (1st) day of December, 1957, unless a later date is agreed upon [as thereinafter provided]. * * * All adjustments and computations for determining final price to be paid and the transfer of the properties hereby contracted to be sold and purchased and operation of the business, shall be as of the end of the business day on the day preceding the date of closing * * *."

On December 30, 1957, the sale and purchase was consummated by transfer of the properties to City and the payment of the purchase price. In the warranty deed of that date by which Water Company transferred and conveyed to City specifically described real estate, it convenanted "that the said premises are free and clear of any encumbrance done or suffered by it or those under whom it claims; and that it will warrant and defend the title to said premises * * * against the lawful claims and demands of all persons whomsoever, excepting that no warranty is made as to city, county or state realty taxes for 1957 and thereafter, which might constitute a lien against these premises."

The other conveyance of the same date was titled "Deed and Bill of Sale," and purported to convey both real and personal property although no real estate was specifically described. It also contained these recitals:

"It is understood and agreed that the properties and assets hereby sold and transferred are sold and transferred subject to all ad valorem property taxes levied for the year 1957 and thereafter and City agrees to protect and save the company harmless from any liability for payment of same. * * *

"Party of the Second Part, in consideration of such payments, assumes Party of the First Part's entire liability to the cus-

tomers under and in accordance with the tariffs, rules and regulations of Party of the First Part under which said advances were made to said customers for the whole of all the 'customers' advances for constructions.' * * *

"Party of the Second Part agrees to, does and shall assume all liability to such customers for the deposits so made and at this time paid to City [referring to the customers' water deposits paid over by Water Company in cash to City]."

In the habendum clause the Water Company covenanted "that it is lawful owner of all the property, rights and interests hereinabove described, free and clear of all encumbrances and claims, excepting only general property taxes as hereinabove described, and obligations and liabilities to be assumed by Party of the Second Part on the contracts transferred to Party of the Second Part and listed in Part II of Exhibit 'A' hereunto attached, and obligations in connection with customers' deposits and customers' advances for construction specifically assumed by City * * *."

In closing said purchase and sale and pursuant to paragraph IX of the contract, City and Water Company computed and agreed upon the sum of Two Hundred Four Thousand Thirty Seven and 92/100 Dollars ($204,037.92) as the amount that equaled that proportion of the 1957 ad valorem taxes that the number of days that elapsed in 1957 up to and including the date of closing (December 30, 1957) was proportional to the whole of the calendar year of 1957 [363/365ths]. City and Water Company also agreed (in writing) upon a "closing price" of Twenty Million Nine Hundred Twenty-Four Thousand Two Hundred Seventy Dollars ($20,924,270.00) to be paid by City to Water Company on December 30, 1957, and the aforesaid sum of Two Hundred Four Thousand Thirty-Seven and 92/100 Dollars ($204,037.92) was deducted from the purchase price in arriving at the aforesaid "closing price" in accordance with the provisions of paragraph IX of the contract; said "closing price" was subject to further adjustments, additions and computations (not necessary to be noticed) in accordance with the written agreement between the parties last above mentioned.

The first point relied on for reversal is that the trial court had no jurisdiction to entertain this action "because it is a suit to collect taxes." The more specific ground on which this point is based is that the two methods prescribed by our statutes applicable to Greene County (foreclosure of the state's lien for taxes by advertisement and sale of delinquent lands under Chap. 140, and distraint of personalty under § 139.120) constitute exclusive methods for the collection of taxes on realty, and bar all suits for such purpose ("not just suits to enforce tax liens").

It would serve no purpose to review the cases cited on this question because none of them are comparable on the facts. They declare or apply certain principles as to which there is no contest here, typically these (as excerpted from State ex rel. Hayes v. Snyder, et al., 139 Mo. 549, 554, 41 S.W. 216, 217: "[I]f the statutes of this state make special provisions for the collection of taxes against real estate, and do not apparently contemplate that any others will be necessary, the mode of collection prescribed by statute is exclusive. Cooley, Tax'n (2d Ed.) 16, says: 'But, in general, the conclusion has been reached that where the statute undertakes to provide remedies, and those given do not embrace an action at law, a common-law action for the recovery of the tax as a debt will not lie.' This is the generally accepted doctrine, though there are exceptions to this general rule; * * *. There are therefore two different methods provided by statute for the collection of taxes against real estate, viz. one by suit to enforce the state's lien [now supplanted in all counties except those of the first class and in the City of St. Louis by the administrative proceeding involving advertisement and sale under Chap. 140, supra] against the land, the

other to distrain personal property for 'all taxes.' * * * It was said in City of Carondelet v. Picot, supra [38 Mo. 125]: 'The levying of taxes is a matter solely of statutory creation, and no means can be resorted to, to coerce their payment, other than those pointed out in the statute.' "

The petition is quite lengthy, contains eight counts, and covers thirty-three pages of the transcript. We deem it unnecessary to even summarize its mountainous allegations. While it is ineptly captioned, "Petition—Collection of Delinquent Taxes and for Declaratory Judgment," such label is neither conclusive or even persuasive as to its precise nature. It is not in any sense a conventional suit for the collection of delinquent real estate taxes (such as is authorized in counties of the first class and in the City of St. Louis (§ 141.090),[1] nor is it bottomed upon any liability arising solely from the exercise of the state's taxing power. No foreclosure of any tax lien upon real estate is sought or involved, nor is it sought to obtain a personal judgment for taxes, as such, or to recover monies payable from taxes imposed by City. Count II of the petition (being one of the two on which the judgment appealed from was rendered) is bottomed on the theory that plaintiff is a third-party creditor beneficiary under the contract; that City's liability and obligation in the premises rests upon its independent, voluntarily assumed contractual duty to "discharge all liability for the whole of the year's ad valorem taxes" (by paying to plaintiff collector the amount by which the purchase price was reduced, $204,037.92, which sum represented Water Company's agreed pro rata share of said taxes), and that City received the aforesaid tax monies in the sum of $204,037.92 which in equity and good conscience should have been paid to the collector for distribution to the taxing units for whose benefit the action was brought, and thereby became a trustee as to such monies, holding same for payment to the collector for the use and benefit of said taxing units. The court so found, and entered judgment accordingly, including appropriate declarations under Count VIII.

Other theories are advanced in the petition, but without separately or further developing them it may be said that the following characterization made by plaintiff as to the nature of the action is fair and apt: "[It] is an action brought on (1) a liability imposed by contract either independent of (the basis of the judgment here) or in fulfillment of the hereinafter mentioned duty imposed by law upon City or (2) a liability imposed by law by reason of City's failure to perform its duty under law to provide for the payment of taxes out of the purchase money or fund at the time of the transfer of the real estate or (3) a liability for damages resulting from conversion or (4) a declaratory judgment action relative to these first three liabilities."

As regards the remedy of distraint, it seems to be conceded that if goods and chattels of Water Company could be found in Greene County, they would be subject to being seized and sold by the collector for the unpaid taxes on said land, but City tacitly (if not expressly) admits that "the remedy of distraint is not effective at this time." (We express no opinion on whether distraint still lies.)

■ If the action were one to foreclose the state's lien, or to obtain a personal judgment for taxes, *as such, and apart from contract,* then City's position would undoubtedly be correct; but, as we have seen, it is not at all of that kind, but being of the nature we have outlined, we hold the circuit court was not deprived of jurisdiction of the subject-matter by reason of the statutes invoked by City.

Somewhat akin to the foregoing point, and running through City's argument on the whole case is the theme and contention

1. All statutory references are to RSMo 1959 and V.A.M.S., unless otherwise noted.

that by reason of Art. X, § 6, Const. of Mo., V.A.M.S., and the doctrine of such cases as State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S.W.2d 31, City is "constitutionally exempt from the payment of taxes which plaintiffs seek to collect in this action." The constitutional provision thus invoked provides: "All property, real and personal, of the state, counties and other political subdivisions * * * shall be exempt from taxation." (Art. X, § 6, Const. of Mo.) The Baumann case, in applying this principle of exemption, held that land purchased by the city in its public governmental capacity became immune from taxation as soon as the city became the owner (or equitable owner) of it, and moreover that such immunity extended to taxes assessed and levied prior to the acquisition of the property by the city. Such seems to be the general rule. See Anno.: 158 A.L.R. 563. In Baumann the precise effect of acquisition upon prior liens was not specifically determined, i. e., whether the same were extinguished or merely rendered dormant or unenforceable. We do not need to inquire into the latter question, at least at this juncture, but City's claim of constitutional immunity will be considered in connection with plaintiff's contention that the contract obligated City to pay the priorly assessed taxes, and that plaintiff is a third-party creditor beneficiary of that contract.

We are thus brought directly to the crucial question in the case, the solution of which lies in the interpretation to be given the mooted provisions of paragraphs VIII, IX and XI out of which City's liability is asserted to have arisen. City's primary contentions on this phase of the case are: (1) That the contract does not create any rights in plaintiff enforceable against the City; (2) that City did not promise to pay said taxes, and has no obligation to pay the same, is constitutionally inhibited from so doing, and that its only obligation in that regard is to hold Water Company harmless from the collection of such taxes, and that such obligation is simply an indemnity agreement on which no third party may sue, and (3) that the contract was not made for the benefit of plaintiff, and he is at most an incidental beneficiary having no right of action thereon. Collector's contentions are, of course, to the contrary.

Under plaintiff's own theory, if he is a third-party creditor beneficiary under the contract, his status and rights as such derive from the provisions of IX (under which the purchase price to City was reduced to the extent of $204,037.92 in conformity with the formula therein prescribed) and, indeed, primarily from the concluding clause of the next to the last sentence of said paragraph, viz.: "* * * and the City shall discharge all liability for the whole of the year's ad valorem taxes and hold Water Company harmless therefrom." We use the word "primarily" in the above connection for the reason that in the absence of the quoted language there could not be even a semblance of a claim of liability against City.

The provisions of VIII and XI are also relied on, in conjunction with IX, as fixing liability on the part of City. The relevant portions of VIII and XI are hereinabove set out, and so are not repeated here. They deal with the matter of transferring the properties to City free and clear of encumbrances. Pointing to the provision of VIII that the property was to be transferred to City "at the time of closing, free and clear of all liabilities and encumbrances of every kind," plaintiff contends that tax liens were comprehended or included within the meaning of said language. Plaintiff also contends that the further provision of VIII (that "Water Company shall pay and discharge any and all of its debts and liabilities that are or might become a lien, charge or encumbrance against the properties transferred to City as of the date of closing or make provision therefor satisfactory to City") "meant that if all liabilities and liens (including the liability and lien for taxes against the property) were not paid and discharged at or prior to the date of closing, provision for their payment

and discharge was to be made," and that "such a provision for the payment and discharge of the 1957 tax lien and liability was made in Paragraph IX." (This was the theory adopted by the trial court.)

■ Paragraph IX makes it clear, we think, that it was not contemplated that Water Company should itself pay to the taxing authorities any of the 1957 ad valorem taxes. If this is not so, there would have been no occasion for City to have agreed to discharge all liability for such taxes and hold Water Company harmless therefrom. The paragraph deals exclusively with the subject of taxes, making the specific and detailed provisions we have noticed with respect to ad valorem taxes, and concludes thus: "All *other* taxes it may owe shall be *paid* by Water Company." The requirements of IX with reference to the reduction to be effected in the purchase price, and of the obligation of City to discharge all liability for the year's ad valorem taxes were expressed imperatively, by the word "shall," thus negating any idea that Water Company might or would pay same directly. Under the familiar rule invoked by City that general terms and provisions of a contract yield to specific ones, it is our view that the subject of *ad valorem taxes,* having been segregated and dealt with in IX in a particular and special way, was thereby taken out of and removed from the intended operation of the provisions of VIII and XI which dealt with the general subject of liens and encumbrances. In this situation City's liability must be held to turn on the meaning of the obligation that it "shall discharge all liability for the whole of the year's ad valorem taxes and hold Water Company harmless therefrom."

■ A contract or other written obligation is to be construed in the light of the law existing at the time it was entered into. Hubbard v. Hubbard, Mo.App., 264 S.W. 422; Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W.2d 810. The Baumann case makes it plain that the property became exempt from taxation at the moment City became the owner, and that such immunity extended to the 1957 taxes theretofore assessed, so that the property, at the time City acquired the same, was no longer legally subject to any measure by which collection could be coerced. This principle is aptly and more fully expounded in the oft-cited case of Gachet v. New Orleans, 52 La.Ann. 813, 27 So. 348: " 'The tax law of a state,' says Desty in his work on Taxation (volume 1, p. 48), 'applies to persons only, and not at all to political bodies like municipal corporations, which exercise in different degrees the sovereignty of the state.' Hence it is that when property upon which state taxes are assessed is acquired by a political subdivision of the state, like the city of New Orleans, to which certain powers of sovereignty and government have been delegated by the state, which property is acquired for purposes of public utility coming within the scope of the powers so delegated, and is immediately dedicated or applied to such purposes of public utility, the taxes so assessed in favor of the state upon the same cease to be exigible. It pertains to the public policy of the state not to exact taxation on property so held and used. Within the scope of the powers delegated to it, the city stands for the state, and property acquired by the city in the due execution of its mandate from the state stands in consimili casu with property owned by the state itself, and taxes assessed in favor of the state upon such property must be held abated. It is a commingling of the qualities of debtor and creditor in such way that there arises a confusion of right extinguishing the obligation."

■ Paragraph IX does not use the word "pay" or "payment" in any connection with respect to ad valorem taxes, but it does as to all other taxes. The very next sentence following the clause in controversy says this: "All *other* taxes it may owe shall be *paid* by Water Company." It will be noted that in the first sentence of VIII both "pay" and "discharge" are used,

and this conjunctively ("shall pay and discharge"). Elsewhere in the same paragraph the word "pay" is used twice. We think it significant that it is absent in the key clause, but is used in the other connections just noted. "Discharge" has various meanings (including that of payment), depending on the connection in which it is used. In the circumstances here considered, we think it does not necessarily import payment. Obviously, discharge may be accomplished without payment, as, for example, by set-off or the like, to say nothing of sovereign immunity. It "is a general word covering all methods by which a legal duty is extinguished." Restatement, Contracts, § 122(b). It is only by construing the word "discharge" to mean that City became liable for the payment of the whole year's taxes that there is any obligation on it to pay that part based on the proportion of the year Water Company owned the property, and that portion is all that is here in controversy.

We do not ascribe to the contract the meaning that, because of the reduction in the purchase price to the extent of a prescribed proportion of the year's taxes, it was intended City voluntarily assume or become liable to pay not only that portion (which for convenience may be called Water Company's pro rata share), but also the remaining proportion (as to both of which, in the absence of contract, City would in any event be exempt). Under plaintiff's construction, had the transaction been closed July 1st, City would nevertheless have been liable for the whole year's taxes. This, we think, was not intended. We hold there was no obligation on the part of City to pay the taxes in question, or any part of them. In this view, plaintiff is not a third-party creditor beneficiary, and cannot recover. The fact that City will have received a windfall does not affect the question of law thus resolved, unfortunate as this may seem from the standpoint of the other governmental units at whose expense this result follows.

The judgment is reversed, and inasmuch as the issues between City and Water Company were, by agreement, held in abeyance and not tried pending the outcome of the case as to plaintiff, the cause is remanded.

All concur, except HOLMAN, J., not sitting.