John **PHILLIPS**, et al., Trustees of Lake St. Clair, Appellants,

v.

**AUTHORIZED INVESTORS GROUP, INC.**, a Missouri Corporation, Respondent.

No. 41547.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 8, 1981.

David J. Barton, Arnold, for appellants.

Thurman, Nixon, Smith, Howald, Weber & Bowles by Jeremiah Nixon, Hillsboro, for respondent.

SATZ, Presiding Judge.

In this cause, plaintiffs, Trustees of Lake St. Clair Subdivision, sued defendant, Authorized Investors Group, Inc., to collect unpaid subdivision assessments on property owned by defendant at Lake St. Clair. After trial to the court below, the court found defendant was not liable for the assessments asserted by plaintiffs. We affirm.

Defendant is the developer of Lake St. Clair subdivision in Franklin County, Missouri. In 1966, defendant began developing the subdivision and, shortly thereafter, began selling lots. Each lot in the subdivision is subject to an indenture which was filed and recorded with the subdivision plats. As developer, defendant was the grantor of this indenture. Under the indenture, the trustees were given title to various drives, parkways and easements within the subdivision. Paragraph 3 of the indenture empowers the trustees to levy assessments against the lots in the subdivision.[1] The assessments are to defray the costs of executing the indenture. The assessments can be levied yearly at a uniform rate per front foot of property. Upon its recording, an assessment becomes a first lien upon the land assessed. Collection of any unpaid assessments can be enforced "by suits at law."

From 1966 to February, 1976, the three people who served as trustees under the indenture were also the only officers, directors and shareholders of defendant. Under the provisions of paragraph 3 of the indenture, these original trustees levied assessments against lots in the subdivision for the years 1973–1976. Some lots in the subdivision were sold by defendant for cash, and title to those lots was conveyed immediately to the buyer. Most of the lots, however, were sold by defendant on contracts for deed. Defendant retained title to these lots until the purchase price was fully paid. When an assessment was made, notice was sent by letter to the purchaser, including a purchaser under contract for deed whose title was still held by defendant. Defendant also retained title to other lots which had not been sold either for cash or under a contract for deed. No formal

1. Paragraph 3 of the Restrictions Lake St. Clair reads:

"For the purpose of defraying the costs and expenses which may be incurred in the execution of the trust by Trustees, they may levy assessments against the respective lots contained in said subdivision in such amounts as they deem necessary, but to be based upon a uniform rate for front foot provided, however, that such assessments may be levied not more than once during each calendar year and no such assessment shall exceed $0.65 per front foot without the consent of the owners of the majority of lots contained in the subdivision. Front shall be considered the side toward the lake for assessment pur-

poses. All such assessments shall become a first lien on the land assessed from the date of recorded assessment filed in the Recorder's Office of Franklin County, unless lien is subordinated by Trustee, in writing, to other liens, or unless the assessments are paid. Assessments shall be payable (sic) sixty days after the date levied and shall thereafter bear interest at a rate of 6% per annum until paid, and the collection thereof may be enforced by suits at law instituted by the Trustees against any property owner of a lot on which lien shall remain undischarged and successors in interest to such lot. Assessment funds may be used for maintenance, management, salary or capital improvements."

notice of assessment was ever sent to defendant for the years 1973–1976 on these unsold lots, nor was defendant sent formal notice of assessment on the lots to which it held title subject to contracts for deed.

In 1976, the property owners elected three new trustees to replace the original trustees. These new trustees are not associated with defendant. The new trustees levied an assessment for 1977 pursuant to paragraph 3 of the indenture. Written notice was sent to defendant that this 1977 assessment was levied against all lots to which defendant held title. This assessment included those lots held for sale, as well as those under contract for deed. The notice also listed as due the assessments for 1973–1976 on all lots owned by defendant during that period. Defendant refused to pay these assessments, and the new trustees, as plaintiffs, filed this action to collect the assessments.

At trial, defendant relied on three basic defenses. First, defendant contended that the indenture did not subject it to assessment. Second, it contended that even if it were subject to assessment, it need not pay the assessments in issue because plaintiffs failed to follow the procedure required by the indenture for collecting unpaid assessments. Third, defendant argued that it was protected from plaintiffs' action by the doctrine of laches.

The trial court was persuaded by defendant's first contention. The court found there was no provision in the indenture expressly authorizing the assessment of the lots owned by defendant. The court concluded "the absence of such express provision creat[ed] an ambiguity." Resolving this ambiguity by extrinsic evidence, the court determined that defendant, as the grantor-developer, did not intend to subject the lots it owned to assessment. Thus, the court concluded defendant was not liable for the assessments levied by plaintiffs. We reach the same result as the trial court but do so by different reasoning.

■ Our initial inquiry is whether the trial court was correct in concluding that the indenture was ambiguous. Although we give considerable deference to judgments of the trial court which turn on factual evaluations and determinations, *see* Rule 73.01.3(b); *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980), we make our own independent evaluation of the trial court's declarations or applications of the law; *State ex rel. Igoe v. Bradford*, 611 S.W.2d 343, 350 (Mo.App. 1980); *see In re Marriage of Galloway*, 547 S.W.2d 193, 196 (Mo.App.). Whether an ambiguity exists in the terms of a written instrument is a question of law which must be resolved prior to any factual determination about the meaning of the allegedly ambiguous language. *Rouggly v. Whitman*, 592 S.W.2d 516, 519 (Mo.App.1979). Contrary to the trial court, we find the indenture to be clear and unambiguous, manifesting no intent to exempt defendant's lots from assessment.

Paragraph 3 of the indenture governs the assessments. This paragraph gives the trustees authority to levy assessments against "the respective lots in the subdivision." No lots are exempted and there is no reason for us to read in an exemption. Paragraph 3 is the only section of the indenture which deals with assessments. No other section of the indenture indicates that defendant's lots ought to be exempt from assessment. Had defendant intended to exempt itself from assessment, it could have easily used explicit language to reflect that intention. Indeed, it is apparent that defendant realized it had the power to do so. In paragraph 4 of the indenture, the trustees are authorized "to make a charge (except to Grantor) for benefit of subdivision for permits they may grant to extend water or sewer mains . . . ." By this provision, defendant—the grantor—clearly exempted itself from the noted charges. Defendant could have been equally precise in paragraph 3 had it intended to exempt itself from assessment. It did not do so. The language of paragraph 3 is unambiguous. Thus, all lots in the subdivision, including defendant's lots, are subject to assessment.

■ Defendant argues that, as the grantor-developer of the subdivision, it could not become liable for assessment unless it specifically agreed to be liable. Defendant cites *Baker v. Lake Lorraine, Inc.*, 562 S.W.2d 374 (Mo.App.1974) as support for this argument. Admittedly, in *Baker*, under the indenture in issue there, this court held the grantor was not required to pay assessments on lots it owned in the subdivision. *Id.* at 378. *Baker*, however, involved a restriction materially different than the present restriction. In *Baker*, the restriction provided: "As part of the consideration for the sale of this lot Grantor shall have the right to assess the owner of these lots ... such sums as Grantor deems necessary ...." *Id.* at 378. This restriction clearly contemplates a sale and it permits the grantor to assess the purchaser. From this, it was logical to conclude in *Baker* that the grantor was not required to assess itself. This conclusion cannot be translated sensibly into the universal exemption urged by defendant. More important, the present restriction differs materially from the *Baker* restriction. The present restriction does not mention a sale and, in the present case, the assessment is levied by the trustees, not the grantor. Thus, *Baker* cannot be controlling and defendant is liable for the assessments levied on lots which it owns.[2]

■ Defendant next argues the indenture requires that an assessment be filed and recorded as a prerequisite to processing a suit to collect the assessment. Since the assessments in issue were not recorded, defendant argues, the present action must fail. Plaintiffs counter that the remedy for collection urged by defendant is not an exclusive remedy and that, under the indenture, collection of the present assessments can be processed without prior recording. We agree with defendant.

As previously noted, paragraph 3 of the indenture is the only section dealing with assessments. It defines all the important aspects of the assessment process. It explains the purpose of the assessments, defines who shall make them and provides the method for their levy. More important, it prescribes a particularized method for their collection by providing that:

"... assessments shall become a first lien on the land assessed from the date of recorded assessment filed in the Recorder's Office .... ... the collection [of assessments] may be enforced by suits at law instituted by the Trustees against any property owner of a lot *on which [a] lien shall remain undischarged* and successors in interest to such a lot." [emphasis added].

Clearly, a prior recording and an undischarged lien would be necessary prerequisites to a suit brought against a successor in interest to the original party obligated to pay an assessment. The lien, in this instance, is the only notice which the indenture requires the successor lot owner be given. We see no incongruity in the indenture requiring the same notice be given to the party originally assessed.

Plaintiffs contend that paragraph 3 of the indenture does not provide an exclusive remedy; rather, plaintiffs argue that paragraph 15 permits them to bring this present action for collection without a prior recording of the assessments. Paragraph 15 provides:

"A violation or threatened violation of restrictions or other provisions of this indenture shall give rise to a cause of action for an injunction, damages or both, or other recovery, in favor of Trustees and owners of lots in Lake St. Clair and such action may be instituted by Trustees or any lot owner, independent of the other."

■ This paragraph does nothing more than state a self-evident truism: a cause of

---

2. This includes lots which it owns subject to contracts for deed. Though the provisions of those contracts give it some rights against the purchaser for reimbursement, defendant obviously could not contract with purchasers to extinguish its obligations to pay assessments.

action is created by the violation of the indenture. Even without this general statement being made, the parties to the indenture would have a cause of action for its violation. While paragraph 15 reflects, in general, the existence of a cause of action for the violation of the indenture, paragraph 3 defines the precise method for processing the specific cause of action created by the failure to pay an assessment. Where possible, we reconcile provisions of a written instrument which appear contradictory, *see, In re Marriage of Buchmiller*, 566 S.W.2d 256, 259 (Mo.App.1978) and, in doing so, we give preference to the specific provisions over the general. *See, State ex rel. Smith v. City of Springfield*, 375 S.W.2d 84, 91 (Mo. en banc 1964). Paragraph 3, being more specific, is controlling here, and our construction of paragraph 3 does not impair the sense of paragraph 15 nor does it render that paragraph meaningless. By failing to record the present assessments prior to filing their action, plaintiffs failed to comply with the provisions of paragraph 3 and, thus, plaintiffs' present action must fail.[3]

Using different reasoning, we have reached the same result as the trial court. However, "on appeal, our primary concern is with the correctness of the result—not the route by which it is reached." *Maryland Plaza Redevelopment Corp. v. Greenberg*, 594 S.W.2d 284, 286 (Mo.App.1979). Accordingly, we affirm the judgment of the trial court.

SMITH and SIMON, JJ., concur.

---

**3.** Because these reasons prevent plaintiffs from prevailing, we do not address the issue of whether the doctrine of laches would likewise prevent plaintiffs from prevailing.