**TRUSTEES OF RIVERVIEW ESTATES,**
Plaintiffs–Respondents,

v.

**Bailey J. BALLARD and Rose L. Ballard, his wife, Defendants–Appellants.**

**No. 57253.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 29, 1990.

Louis Jerry Weber, Hillsboro, for defendants-appellants.

PER CURIAM.

Defendants appeal from a judgment for unpaid subdivision assessments. We modify and affirm as modified.

Plaintiffs are trustees of Riverview Estates Subdivision in Jefferson County. The subdivision was dedicated in 1973. It is bordered on the west by State Highway B and on the east by the Big River. Most of its 43 lots contain less than two acres. The largest lot is Lot 43, which has nine acres; the next largest lot has 3.37 acres. Most of the lots either front on Highway B or have frontage on one of the subdivision's private streets.

Lot 43 is unique in that it runs about ⅓ of a mile north and south and is extremely narrow east and west with its most narrow distance being its northern boundary of 156 feet. Along with one other lot (which is owned by the subdivision), it is located approximately 200 feet below the rest of the subdivision and is separated from it by a high bluff on its western border. Its eastern border is the Big River.

Lot 43 is neither touched nor served by any public or subdivision road; it is accessible only from a private easement over non-subdivision land. The access easement is 40 feet wide at its entrance.

Defendants purchased Lot 43 in 1980. As with every other lot of the subdivision, Lot 43 was encumbered by a set of restrictive covenants entitled, "Restrictions of Riverview Estates." Paragraph three of these restrictions provided:

3. For the purpose of defraying the costs and expenses which may be incurred in the execution of the Trust by Trustee, he may levy assessments against the respective lots contained in said subdivision in such amount as they may deem necessary, but to be based upon a uniform rate *per front foot*, provided, however, that such assessments may be levied not more than once during each calendar year and no such assessments shall exceed $ 0.65 *per front foot* without the consent of owners of a majority of the lots contained in the subdivision. All such assessments shall become a first lien on the land assessed from date of recorded assessment filed in the Recorder's Office of Jefferson County, unless lien is subordinated by Trustee, in writing, to other liens or unless the assessments are paid. Assessments shall be payable sixty days after the date levied and shall thereafter bear interest at a rate of seven percent (7%) per annum until paid, and the collection thereof may be enforced by suits at law instituted by the Trustee against any property owner of a lot on which lien shall remain undischarged and successors in interest to such lot. Assessment funds may be used for maintenance, management salary or capital improvements. (Emphasis added).

Defendants were first assessed the annual subdivision assessment provided for therein in 1986. In that year, plaintiffs assessed their lot for $75.00; in both 1987 and 1988, the lot was assessed $101.40.

Generally, the trustees used road frontage in determining the number of front feet assessed. A lot which fronted roads on more than one side was assessed for frontage on each road. It appears this formula was used because the primary initial purpose of the assessment was to provide for a scheme of private subdivision roads. However, Paragraph 3 also provides that assessments may be used for "maintenance, management salary or capital improvements." No evidence at trial indicated the specific purpose of the assess-

ment at issue, which plaintiff's witness (a trustee) characterized merely as a "subdivision assessment."

By 1986, the trustees were assessing frontage on nonsubdivision, public roads (i.e., Highway B) as well as subdivision roads. Because it fronted on neither a public nor a subdivision road, Lot 43 was assessed based upon the width of its northern boundary. Trustees chose that boundary because it was the shortest side of the lot and the side of ingress and egress. The trial court entered judgment based upon the trustees' computation of the assessment.

■ Since this is an appeal from a judge-tried case, the standard of review is supplied by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32.

■ Defendants contend that the phrase, "per front foot," which is not further defined in the Restrictions, is ambiguous and therefore void and unenforceable.[1] In *Phillips v. Authorized Investors Group*, 625 S.W.2d 917 (Mo.App.1981), we held that the question of whether a document authorizing a subdivision assessment is ambiguous is a question of law which must be resolved prior to any factual determination about the meaning of the allegedly ambiguous language. *Id.* at 919. We make our own independent evaluation of the trial court's determinations or applications of the law. *Id.*

The phrase "per front foot" is characteristic of the "front foot rule" of assessment, which has a long history and a well-understood meaning. The rule provides that a lot owner "shall be charged with an equal proportion of the entire cost of the improvement according to the frontage of his property, and not the cost of the ... work done in front of the individual lots assessed." *Higginsville ex. rel. and to the Use of Kasco, Inc. v. Alton R. Co.*, 171

S.W.2d 795, 802 (Mo.App.1943) (quoting 44 C.J. p. 661). The cases make it plain that the rule applies to the road or street frontage of the assessed lot. *See id.; Neenan v. Smith*, 50 Mo. 525, 528 (1872); *Weber v. Schergens*, 59 Mo. 389, 390 (1875); *Collier's Estate v. Western Paving and Supply Co.*, 180 Mo. 362, 79 S.W. 947, 949 (1904); *Hesse–Rix Co. v. Krug*, 319 Mo. 880, 6 S.W.2d 570, 574 (1928). The rule has also been applied to frontage on or facing a lake or waterway. *See* e.g., *Phillips*, 625 S.W.2d at 918 n. 1. In *Mound City Construction v. Magurn*, 97 Mo.App. 403, 71 S.W. 460 (1902), we described the rule with approval:

> By that rule the total cost is ascertained as well as the total frontage of the property chargeable with a special tax; then the former item is divided by the number of feet of frontage and the rate per foot is thus ascertained; each lot is then assessed by multiplying the rate per foot of costs by the front feet it exhibits and the total is the assessment against each lot.... The front foot rule does not take account of anything but frontage ...

*Id.* 71 S.W. at 462. Based on the foregoing authority, we conclude that the phrase "per front foot" is not, as a matter of law, unenforceably ambiguous.

■ Defendants also argue that no assessment based on the front foot rule can be applied to them because their lot does not "front" a subdivision or public road. In any event, they argue, the "per front foot" language should only be applied to the "width of [their] private road easement at the point it touches their lot."

We note that in determining the application of a restrictive covenant, the primary object is to ascertain the intention of the parties. *Berkley v. Conway Partnership*, 708 S.W.2d 225, 227 (Mo.App.1986). Ascertaining the intention requires inquiry into the surrounding circumstances as well as the purposes the parties sought to accomplish. *Id.*

---

**1.** Plaintiffs have not favored us with a brief.

Here the surrounding circumstances manifest an intention by the trustees to assess road frontage. Corner lots were assessed for frontage on both abutting roads. For lots with no subdivision road frontage, other abutting roads were used to determine the assessment (e.g., lots fronting on Highway B were assessed based on such frontage). No lot (except Lot 43) was assessed for the entire length of its front property line unless that line represented road frontage. Thus, we agree that application of the assessment to the entire northern boundary line of Lot 43 has no relationship to the front foot rule in the restrictions.

 However, we decline to hold that defendants may escape from the operation of the restrictions altogether. Defendants took title to a lot which was encumbered by the same assessment restrictions as the other 42 lots. The fact that their lot was in effect "landlocked" does not permit them to avoid bearing some of the burden of administration and upkeep for the subdivision. No plan of assessment is absolutely fair, but it appears to us that the dedicators of the subdivision in their restrictions have adopted a well-accepted method. As the Missouri Supreme Court noted in *Bridges Asphalt Co. v. Jacobsmeyer*, 346 Mo. 609, 142 S.W.2d 641 (1940):

> It is a recognized fact that there are bound to be certain inequalities and hardships in apportioning improvement taxes even under a plan which is reasonably fair and just, because human wisdom has not yet devised a scheme of exact equality in the assessment of such taxes. The question is to be considered with a liberal view of the incidental inequalities [if] the expense has been apportioned as justly and as fairly as is reasonable under the circumstances ...

*Id.* 142 S.W.2d at 643.

We are persuaded by defendants' argument that the width of the private entry easement into their property supplies a reasonable basis on which to measure their assessment responsibility to the subdivision. The entrance easement is 40 feet wide according to the plat. That width constitutes frontage upon which the trustees can apply the front foot language from the restrictions. This interpretation is sound and is in accord with the long litany of front foot rule cases decided by the appellate courts of this state.

The assessment for 1986 should have been $19.23; for 1987, $26.00; for 1988, $26.00. We therefore, under Rule 84.14, modify the trial court's judgment and order defendants to pay $71.23 plus interest from the due dates. Costs taxed one-half to the plaintiffs and one-half to defendants.

Judgment affirmed as modified.