EDUCAP, INC., Appellant,

v.

Tyler SMITH,

and

Kristine Santos, Respondents.

No. SD 31102.

Missouri Court of Appeals,
Southern District,
Division Two.

March 13, 2012.

**452**

Michael D. Mayes, Springfield, for Appellant.

Jeffrey Thomas, Waynesville, for Respondent.

Before FRANCIS, P.J., BARNEY, J., and SCOTT, J.

PER CURIAM.

Educap, Inc. ("Appellant") appeals the judgment of the trial court which found in favor of Tyler Smith ("Respondent") on Appellant's "PETITION–BREACH OF CONTRACT" which sought a monetary award in the total amount of approximately $24,420.36.[1] Following a bench trial, the trial court entered a judgment in favor of Respondent. Appellant asserts four points of trial court error relating primarily to the exclusion of certain exhibits and evidence at trial. We reverse and remand the decision of the trial court.

■ "With respect to issues of fact, we review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo.App.2004). Viewed from the foregoing perspective, the record reveals that on September 3, 2010, Respondent filed its breach of contract petition against Respondent. Attached to the petition were two pages bearing the Bank of America name and symbol entitled

---

**1.** Respondent Kristine Santos ("Ms. Santos") was voluntarily dismissed from the lawsuit by Appellant. The record reveals she was never served with the lawsuit and did not appear at trial.

"Combined Private Education Loan Application and Promissory Note." These two pages, which were numbered "Page 6 of 15" and "Page 7 of 15," appear to detail a transaction wherein Respondent applied to Bank of America for a student loan in the amount of $21,614.00. The second page of this attachment shows two signatures purporting to be that of Respondent and Ms. Santos, and a recital that Ms. Santos and Respondent "promise[d] to pay Lender the Loan Amount together with interest in accordance with the terms of this Note...." There are no references on either page to Appellant. Respondent answered the petition by denying every allegation with the exception of his county of residence.

A bench trial was held on January 26, 2011. The only witness testimony offered was that of Zabrina Shepherd ("Ms. Shepherd"), Appellant's "custodian of records...." Ms. Shepherd testified that her company is a "not-for-profit company that provides private educational loans for students." Appellant then moved to admit Exhibit 2, described by Ms. Shepherd as a "contract that [Respondent] took out with [Appellant]" and Respondent's counsel objected on a foundational basis as well as an assertion that the issue was outside the scope of the pleadings. Respondent's counsel was permitted to voir dire Ms. Shepherd as to her knowledge of the documents in the exhibit. Following that testimony, the trial court sustained Respondent's "objection as to the partnership [between Appellant] and Bank of America as beyond the scope of the pleadings. It's not alleged in your pleadings. This is a Bank of America document. And she can't authenticate the—the borrower's signature.... I will sustain the objection."

Later in her testimony, subsequent to Appellant's counsel moving for the admission of Exhibit 2, Respondent's counsel objected that there was not "a foundation laid for ..." Exhibit 2; that Exhibit 2 was not a record produced by Appellant; that Appellant cannot "authenticate[ ] any signature on it;" and that the testimony was "[b]eyond the scope of the pleadings." Respondent's counsel was again given an additional opportunity to voir dire Ms. Shepherd on this topic and Respondent's objection was sustained by the trial court. Exhibit 2 was excluded from evidence by the trial court.[2]

Appellant then attempted to introduce Exhibit 1. Ms. Shepherd identified it as "the fulfillment kit, the full application that the borrower receives when they apply for a loan." Ms. Shepherd testified that Appellant prepared all of the documents in the fulfillment kit in the ordinary course of business—although all of the documents reference Bank of America—and the documents were produced at or near the dates that appear on them.[3] Counsel for Respondent then objected to it being admitted into evidence and was again given permission to voir dire Ms. Shepherd. The following then occurred:

---

**2.** Over Respondent's attorney's objection as being beyond the scope of the pleading, the trial court permitted Ms. Shepherd to identify Appellant's Exhibit as being a "check that was cut for the loan, the cashed check [showing the amount of $17,046.64]," made to the order of "[Respondent] & [Ms.] Santos" from "[Appellant], disbursement agent for Bank of America, N.A." Also, Exhibit 4, acknowledged by Ms. Shepherd as a "payment history of Respondent for his financial instrument with [Appellant]," was admitted into evidence.

**3.** The first page of Exhibit 1 sets out "Bank of America Student Loan Program" together with the date of "11/30/2006" and an "Application ID: 10480226." No signatures appear on the "fulfillment kit" although Respondent's name appears throughout the document.

COUNSEL FOR RESPONDENT: Judge, I'm going to object. Relevance. Whether or not they've sent out a packet has no bearing on whether or not there was ever a completed contract. It would have my client's signature on it. Relevance and beyond the scope of the pleadings as well, Your Honor. And, again, they are Bank of America documents.

. . .

COUNSEL FOR APPELLANT: Your Honor, we have authenticated the records as the business records of [Appellant]. The fact that [Appellant's name] doesn't appear on there doesn't mean they are not records of [Appellant], as Ms. Shepherd has testified. The application process is the first step. It also contains the note and the terms of the agreement. And so I think that they are relevant to the issues that we have put before you.

THE COURT: I think [counsel for Respondent] has a point as to foundation in this matter. This is an unsigned application packet, which you haven't tied . . . to this particular defendant. . . . I'll sustain that objection.

Accordingly, Exhibit 1 was not admitted into evidence.

Counsel for Appellant then attempted to have Exhibit 6, a "Certificate of Sale and Assignment" between Appellant and Bank of America, admitted into evidence. Counsel for Respondent then objected to Exhibit 6:

COUNSEL FOR RESPONDENT: Judge, I want to object. There's no assignment pled. I move to strike.

COUNSEL FOR APPELLANT: Your Honor, we've pleaded that we are the legal owner and holder in due course. That necessarily involves an assignment.

COUNSEL FOR RESPONDENT: Judge, if the[y] were suing upon a financial instrument, being a holder in due course for value would be proper. They are suing on breach of contract, which means there has to be an assignment pled, Your Honor.

COUNSEL FOR APPELLANT: Your Honor, I think we've got a—I think we have pleaded properly, and this brings in the—the assignment. The fact that there's a financial instrument that—we have the check in evidence and we have the certificate of sale here to where we have obtained the account and the contract.

COUNSEL FOR RESPONDENT: Judge, holder in due course is defined in the Missouri statutes regarding promissory notes, not contracts, Your Honor.

THE COURT: All right. I'll sustain the objection.

Ms. Shepherd then went on to testify that the documents in Exhibit 6 were prepared by Bank of America and were kept by Appellant in the ordinary course of business. When Ms. Shepherd attempted to testify as to whether Respondent's account was one of those accounts subject to the assignment set out in Exhibit 6, counsel for Respondent objected that the issue was outside the scope of the pleadings. This objection was sustained by the trial court and Exhibit 6 was excluded from evidence. Counsel for Appellant then made an offer of proof as to the general substance of the excluded Exhibits 1, 2, and 6.[4] At the conclusion of Appellant's evidence, Respondent moved for a judgment based on lack of evidence and this motion was granted by the trial court. The trial court found Appellant failed to make "a submissible case" and entered

4.   There was apparently no ruling by the trial court at the conclusion of the offer of proof.

judgment in favor of Respondent. This appeal followed.

■ The judgment in a court tried case such as the present one will be upheld unless it is not based on substantial evidence, goes against the weight of the evidence, or is based on an erroneous declaration or application of the law. *Citibank S.D. v. Miller,* 222 S.W.3d 318, 321 (Mo. App.2007); *see* Rule 84.13(d).[5] " 'In applying this standard, we invoke the rule of due deference, and view the evidence in the light most favorable to the judgment, disregarding all contrary evidence and permissible inferences, and accepting the trial court's determinations of credibility.' " *Id.* (quoting *Mehra v. Mehra,* 819 S.W.2d 351, 353 (Mo. banc 1991)). "The trial court enjoys considerable discretion in ruling on the admission or exclusion of evidence; thus, we will not reverse the trial court's ruling excluding evidence unless the ruling constituted an abuse of that discretion." *Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 780 (Mo.App.2008).

■ In its first point relied on Appellant asserts the trial court erred in sustaining Respondent's "objections to testimony regarding Appellant's business relationship with Bank of America, in connection with the student loan made to Respondent[ ] as beyond the scope of the pleadings...." Appellant maintains that such evidence was relevant to the issues raised in its petition in that section 517.031.1 "allows informal pleadings in the Associate Division." [6] In its second point relied on Appellant maintains the trial court erred in sustaining Respondent's objections to testimony from Ms. Shepherd "regarding a contract, loan, or financial instrument as beyond the scope of the pleadings ..." because informal pleadings are allowed in

the Associate Division under section 517.031.1. We shall address these points conjunctively.

"Rule 41.01(d) provides, as applicable to this case, 'Civil actions pending in the associate circuit division shall be governed by Rules 41 through 101 except where otherwise provided by law.' " *Citibank,* 222 S.W.3d at 322 (quoting Rule 41.01(d)). In turn, section 517.031.1 provides that

[t]he plaintiff shall file a written petition containing the facts upon which the claim is founded. A copy of any written instrument or account in support of the petition should be attached and filed. The pleadings of the petition shall be informal unless the court in its discretion requires formal pleadings.

Section 517.031.1 goes on to provide "that the petition must contain 'the facts upon which the claim is founded.' " *The Medve Group v. Sombright,* 163 S.W.3d 453, 459 (Mo.App.2005) (quoting § 517.031.1) (emphasis omitted). While the strict fact pleading requirements of the Rules of Civil Procedure do not apply to these more informal associate division cases, *Chesterfield Financial Corp. v. North County General Surgery, Inc.,* 917 S.W.2d 603, 604 (Mo.App.1996), there yet remains a minimal requirement that a petition contain " 'the facts upon which the claim is founded.' " *Medve,* 163 S.W.3d at 459 (quoting *Pemiscot Cty. Mem. Hosp. v. Bell,* 770 S.W.2d 499, 502 (Mo.App.1989)); *see* § 517.031.1. The present matter is clearly an action brought under section 517.031.

■ With that being said, we turn to the elements of the stated cause of action found in Appellant's petition. Traditionally, the elements of a breach of contract action are that there (1) was a contract

5. All rule references are to Missouri Court Rules (2011).

6. All statutory references are to RSMo 2000.

with certain terms; (2) the plaintiff "performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Martha's Hands, LLC v. Rothman*, 328 S.W.3d 474, 479 (Mo.App.2010). Here, Appellant's petition stated in its entirety:

> Comes now [Appellant] and for its cause of action, states to the [trial c]ourt the following:
>
> 1. [Appellant] is a corporation licensed to do business in the Commonwealth of Virginia.
>
> 2. [Appellant] is the legal owner and holder in due course for value, before maturity, of [Respondent's] financial instrument, same being attached hereto and made a part hereof and withdrawn by leave of this [trial c]ourt.
>
> 3. That [Respondent] is a resident of the COUNTY OF PULASKI
>
> . . . .
>
> 4. That there is now due thereon the principal sum of $18,039.76, plus interest thereon at a rate of 6.25 [percent] per annum, which up to the time of this petition amount[s] to $1,625.82, plus attorney's fees of $4,822.44 and late fees of $63.85.
>
> WHEREFORE, [Appellant] prays judgment against [Respondent] in the principal sum of $18,039.76, plus attorney fees of $4,822.44, interest, late fees of $63.85 and court costs.

While Appellant's petition certainly lacks the precision, depth and clarity that this Court likes to see in cases before it—even those arising from the associate division— there are enough facts and elements alleged in the petition to apprise Respondent of the cause of action against him and to bar another action by Appellant. Here, the petition asserts the existence of a contract; the basic terms of the contract are specified in the attachments to the petition including the fact that the initial loan amount requested by Respondent was $21,614.00 and that Respondent "promise[d] to pay Lender the Loan Amount together with interest in accordance with the terms of this Note . . . ;" there is money "due" on the contract; and Appellant is damaged. While the issue of the assignment is not particularly pled, Appellant's petition specifically set out that it "is the legal owner and holder in due course for value . . ." of the note at issue such that Respondent has been advised of the "nature of the action and suffices to bar another action thereon by [Appellant]." [7] *Citibank*, 222 S.W.3d at 320. Although the recitation here is extremely bare, it is sufficient under the requirements of section 517.031 in order to state a cause of action for breach of contract in the associate division. [8] Accordingly, Appellant should have been given the opportunity at trial to prove its ownership interest in the promissory note at issue— specifically by introducing evidence relating to the assignment of the interest from Bank of America to Appellant. The trial court erred in not allowing any testimonial evidence from Ms. Shepherd relating to the assignment at issue and in not allowing documentary evidence, such as Exhibit 6, to support that testimony. This matter is reversed and remanded to the trial court for the introduction of such evidence. Points I and II are granted.

---

7. We make no ruling as to whether Appellant was a holder in due course of the promissory note in question.

8. "A promissory note is a written contract for the payment of money and a failure to pay any installment thereof when it becomes due would be a breach of contract." *Sabine v. Leonard*, 322 S.W.2d 831, 837–38 (Mo.1959); *see also Laas v. Wright*, 191 S.W.3d 93, 99 (Mo.App.2006).

Further, as the introduction of evidence relating to Appellant's business relationship with Bank of America may open the door to further evidence excluded by the trial court, there is no need for this Court to address Appellant's remaining points relied on as those issues may very well be remedied upon retrial.

This matter is reversed and remanded to the trial court.