**JAMESTOWNE HOMEOWNERS ASSOCIATION TRUSTEES,**
Respondent,

v.

**Shannon E. JACKSON, Appellant.**

**No. ED 99277.**

Missouri Court of Appeals,
Eastern District.

Dec. 24, 2013.

Bryan E. Brody, Clayton, MO, for appellant.

Martin L. Daesch, St. Louis, MO, for respondent.

### *Introduction*

PATRICIA L. COHEN, Judge.

Shannon E. Jackson ("Homeowner") appeals the Circuit Court of St. Louis County's judgment following a bench trial in favor of Jamestowne Homeowners Association Trustees ("Association") and against Homeowner for delinquent assessments, interest, collection costs, and attorneys' fees. Homeowner argues that the trial court erred in: (1) entering judgment in favor of Association because Association failed to prove it complied with the Trust Agreement and Indenture of Restrictions of Jamestowne Subdivision ("Indenture"); (2) admitting evidence over Homeowner's objections; (3) awarding attorneys' fees; (4) awarding collection costs; (5) denying Homeowner leave to file her answer and affirmative defenses; and (6) entering judgment without addressing Homeowner's requested findings of fact and conclusions of law. We affirm in part, reverse in part and remand.

### *Factual and Procedural Background*

Homeowner owns a home in Jamestowne Subdivision that is subject to the Indenture. Section 3.14 of the Indenture empowers Association to collect money from the owners of the subdivision lots for general maintenance purposes. Section 3.17 of the Indenture provides: "A written or printed notice signed by the trustees or a majority of them, or having names writ-

ten or printed thereon with their authority, stating the amount of money required for general purposes ... shall be served at least thirty (30) days before any payment under said notice shall be required to be made, upon each of said owners...." Section 3.17 further provides that when Association institutes legal proceedings against an owner to collect unpaid assessments, Association may "compel [unpaid assessments] with interest, costs of suit and attorney's fees attending the recovery of payment in default."

■ On February 1, 2012, Association filed a petition under Chapter 517,[1] seeking to recover from Homeowner payment of $1,450.00 in unpaid assessments for the years 2003 through 2012; $626.45 in interest; $501.50 in collection costs; and $850.72 in attorneys' fees. In its petition, Association alleged that: Homeowner "was subject to the Indenture"; "the Indenture provides that all lot owners must pay their proportionate share of common assessments"; "[d]espite [Association's] demand for payment ..., [Homeowner] has failed to pay annual assessments"; and "[p]ursuant to the Indenture, [Association is] entitled to recover the cost of collection" and reasonable attorneys' fees.[2] The trial court entered a default judgment against Homeowner, which it later set aside. In its order setting aside the default judgment, the trial court granted Homeowner an additional thirty days to file an answer and affirmative defense.

Homeowner filed a motion to dismiss for failure to state a cause of action, which the trial court denied. Subsequently, Homeowner filed a motion for leave to file her answer and affirmative defenses out of time. The trial court denied the motion. Prior to trial, Homeowner filed a request for findings of fact and conclusions of law. The trial court conducted a bench trial on August 6, 2012.

At trial, Association called Karen Kelly, the office manager for City and Village Tax Office, LLC ("City and Village, LLC"). Ms. Kelly testified that pursuant to a contract with Association, City and Village, LLC collected association fees from the owners of the Jamestowne subdivision lots ("owners"). Ms. Kelly further stated that City and Village, LLC mailed owners the assessment notices for Association. The notices informed owners that City and Village, LLC were sent on behalf of Association. Counsel for Association presented and Ms. Kelly identified Exhibit 3 as "a copy of the actual invoice that we would mail to the property owners reflecting the amount of the assessment and the due date for said assessments."

Association's counsel moved to admit Exhibit 3, and Homeowner's counsel objected on the grounds of lack of foundation. When the court asked Association's counsel for her response, she assured the court that she could establish the relationship between Association and City and Village, LLC. To that end, Association

---

**1.** Chapter 517's provisions relate to the practice and procedure in civil cases originally filed before associate circuit judges. § 517.011. Section 517.031.1 requires a plaintiff to file a written petition. Section 517.031.2 does not require a defendant to file an answer. "The allegations are deemed to be denied, without the need for a responsive pleading, and the issues for trial are framed by the petition, unless there is an affirmative defense, counterclaim or cross-claim." *Becker Glove Int'l Inc. v. Jack Dubinsky & Sons,* 41 S.W.3d 885, 888 (Mo. banc 2001). "Section 517.031.2 thus requires that 'affirmative defenses, counterclaims and cross claims shall be filed in writing....' " *Id.*

**2.** Although not explicitly labeled as such, Association's petition asserted a breach of contract against Homeowner. *See Educap, Inc. v. Smith,* 362 S.W.3d 451, 455–56 (Mo.App. S.D.2012).

asked Ms. Kelly to explain the relationship between the two entities, and Ms. Kelly testified that Association hired City and Village, LLC to collect Association's assessments, maintain the collected funds, and pay the invoices submitted by owners.

Ms. Kelly testified that Homeowner was delinquent in her assessments. When Association's counsel asked Ms. Kelly to identify the years Homeowner was delinquent, Homeowner's counsel objected on the grounds of "lack of foundation that [Ms. Kelly was] qualified to speak to any of the assessments" because Association failed to show a relationship between City and Village, LLC and Association. The court sustained Homeowner's objection.

Association next asked Ms. Kelly to identify Exhibit 4. Ms. Kelly described Exhibit 4 as "a report generated from our computer system reflecting the unpaid assessments that we maintain the records for [Association]." Ms. Kelly stated that Homeowner owed Association assessments for the billing periods from 2003 through 2012, as well as expenses incurred for the collection of her unpaid assessments. Ms. Kelly concluded that Homeowner owed Association $1,650.00 in unpaid assessments and $644.84 in interest.

Association's counsel moved to admit Exhibit 4. Homeowner's counsel objected on the ground that "there's been no linkage" between City and Village, LLC and Association. The court asked Association to clarify "whose records . . . we're talking about." In response, Association asked Ms. Kelly what entity "keeps [Association's] records." Ms. Kelly testified that City and Village, LLC maintained the records for Association and Exhibit 4 was a printout of one such record. Ms. Kelly stated that she had personal knowledge of and daily involvement in City and Village, LLC's recordkeeping for Association. Association's counsel again moved for the admission of Exhibit 4, and the court admitted it.

Association also examined Ms. Kelly about the attorneys' fees Association had allegedly incurred in its efforts to recover the unpaid assessments from Homeowner. To establish the amount of attorneys' fees, Association's counsel requested permission to show Ms. Kelly Exhibit 5, an affidavit of attorneys' fees created by Association's counsel that provided the amount in legal fees spent to collect the unpaid assessments through the date of trial. Homeowner's counsel objected stating that he had not seen the document and the affidavit was hearsay. The trial court responded that Homeowner could cross-examine Association's counsel at the end of trial. Counsel for Association announced she had no further questions for Ms. Kelly.

During Homeowner's cross-examination of Ms. Kelly, Ms. Kelly conceded that Exhibit 3, the 2012 assessment invoice, only established that Association provided notice for 2012. Ms. Kelly also acknowledged that neither the names nor signatures of the trustees appeared on the 2012 assessment invoice.

After the trial court excused Ms. Kelly, counsel for Association announced she had no more witnesses and stated, "I'd like to make sure that the exhibits all got entered. Were they all five of them?" The court responded, "The only one I show that has not been offered is No. 3." Association's counsel then moved for the admission into evidence of Exhibit 3, the copy of the 2012 invoice to Homeowner, and the court admitted Exhibit 3 over Homeowner's objection for lack of foundation.

Homeowner did not call any witnesses. Homeowner's counsel moved for a directed verdict, arguing that Association failed to establish a cause of action for breach of contract on the grounds that Association

did not comply with Section 3.17 of the Indenture because the notice to Homeowner contained neither the names nor signatures of the trustees. Association opposed the motion, asserting Association complied with "the spirit" of Section 3.17. The court denied Homeowner's motion.

On August 14, 2012, the trial court issued its judgment in favor of Association, finding that "[Homeowner] was assessed pursuant to the Indenture and has failed to pay the annual assessments since 2003." The court further found that "[Association] followed the procedures set out in the Indenture to determine the annual assessment. Interest, collection costs and attorneys' fees are provided for in the Indenture and properly assessed." Homeowner filed a motion for new trial or in the alternative motion for remittitur, which the court denied. Homeowner appeals.

### Standard of Review

We affirm the trial court's judgment in a court-tried case unless there is insufficient evidence to support it, it is against the weight of the evidence, or it declares or applies the law erroneously. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the trial court's judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment. *Braeshire Condominium Bd. of Managers v. Brinkmeyer*, 841 S.W.2d 217, 219 (Mo. App.E.D.1992).

### Discussion

For ease of analysis, we address Homeowner's points out of order. In her second point on appeal, Homeowner contends that the trial court erred in admitting Exhibits 3 and 4 because Association failed to lay a foundation to admit the exhibits under the business records exception to the hearsay rule. More specifically, Homeowner maintains that Ms. Kelly was not qualified to provide testimony for Association because she was not a custodian of the records and she had "no personal knowledge about the contents of these records or whether they were accurate."

The determination of whether a party has laid a sufficient foundation to admit a document into evidence is within the sound discretion of the trial court. *Id.* Section 490.680 provides that a business record is admissible if "the custodian or other qualified witness testifies to [the record's] identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Mo. Rev.Stat. § 490.680.[3] A proper foundation requires testimony from a witness who has "sufficient knowledge of the business operation and methods of keeping records of the business to give the records probity." *Asset Acceptance v. Lodge*, 325 S.W.3d 525, 528 (Mo.App.E.D.2010).

In support of her position that Ms. Kelly was neither a custodian of the records on which Exhibits 3 and 4 were based nor had personal knowledge about the contents of Exhibits 3 and 4, Homeowner relies on *CACH, LLC v. Askew*, 358 S.W.3d 58 (Mo. banc 2012). In *CACH*, the Missouri Supreme Court held that a witness who "lacked sufficient knowledge of when and how" a document was created was unqualified to provide the foundation for a party to admit that document into evidence under the business record exception. *Id.* at 64. In that case, the witness was never employed by either the company that cre-

---

3. Unless otherwise indicated, all statutory references are to RSMo 2000 as supplemented.

ated the document or the company that received the document, she was not the record custodian for either company, and she was not familiar with the procedures of either company. *Id.* at 64, 65.

At trial, Association elicited the following testimony: Ms. Kelly worked for City and Village, LLC for thirty-five years and held the position of office manager. Ms. Kelly kept records such as Exhibit 4 in the ordinary course of business and had personal knowledge as to how the records were kept and looked at them on a daily basis because "this is all part of a computer system that I helped design." Association hired City and Village, LLC to handle Association's assessment collections from owners, and City and Village, LLC was "basically . . . the records keeper for [Association]." City and Village, LLC received the assessment figures that it included in the notices from "the minutes of [Association's] special meeting that are submitted to us." City and Village, LLC's computer system generated Exhibits 3 and 4. Accordingly, Association established that Ms. Kelly had sufficient knowledge of "when and how" Exhibits 3 and 4 were created to lay a proper foundation for Exhibits 3 and 4's admission. Point denied.

■ In her first point on appeal, Homeowner claims that the trial court erred in entering judgment in favor of Association because Association failed to prove that it complied with Section 3.17 of the Indenture. More specifically, Homeowner asserts that Association did not establish that it: (1) provided Homeowner with written notice for 2003 through 2012 that included the signatures or names of the trustees; and (2) introduced evidence of assessment notices provided to Homeowner for years 2003 through 2011. In response, Association contends that it substantially performed its duties under the Indenture and "[a]lthough the trustees did not sign or print their names on the notices sent to [Homeowner], the notice . . . which was admitted as Exhibit 3, certainly comport[ed] with the spirit of the Indenture." Further, Association alleges that even if it did not comply with the Indenture, Homeowner had an equitable duty to pay her assessments.

Association concedes that it did not establish that it provided Homeowner with written assessment notices for 2003 through 2012 that included the signatures or names of the trustees. Nevertheless, it contends that compliance with the "spirit" of the Indenture is sufficient to support the trial court's judgment. In support of its position, Association relies on *Braeshire Condo. Bd. of Mgrs. v. Brinkmeyer,* 841 S.W.2d 217 (Mo.App.E.D.1992). In that case, the court held that although a condominium's bylaws did not explicitly allow the use of mail-in ballots to elect board members, "the procedure did not offend the spirit" of the bylaws. *Brinkmeyer,* 841 S.W.2d at 220. We concluded that the method utilized sufficiently comported with the bylaws, despite the bylaws' ambiguity in detailing the proper procedure for electing board members. *Id.*

Here, the 2012 assessment invoice, Exhibit 3, complied with the spirit of Section 3.17. Section 3.17 of the Indenture provided that Association had to serve owners with written notice of an assessment signed by, or including the names of, the trustees. Exhibit 3 included a statement that it served as notice on behalf of Association and included a billing note stating that the purpose of the funds was to maintain Jamestowne. Ms. Kelly also testified that Association recorded annually the minutes of its special meetings and authorized City and Village, LLC to collect assessments on behalf of Association. We conclude that, although neither the signatures nor names of the trustees appeared

on the 2012 invoice, the invoice contained a statement and billing note that the notice was sent on behalf of Association sufficient to support a finding that the procedure complied with the "spirit" of Section 3.17.

■ Homeowner also asserts that Association failed to prove it complied with Section 3.17 because it introduced no evidence that Association served Homeowner with assessment notices for the years 2003 through 2011. Homeowner argues that the Indenture prescribed a particularized method for assessment collection, and notice was a prerequisite to Association's demand for payment. She asserts that since Association offered into evidence only the 2012 invoice, Association failed to prove it complied with Section 3.17's notice requirement for years 2003 through 2011.[4]

To support her position, Homeowner relies on *Phillips v. Authorized Investors Group*, 625 S.W.2d 917 (Mo.App.E.D.1981). In *Phillips*, we held that a subdivision's indenture providing a particularized method for assessment collection required the subdivision to abide by that method to bring an action to collect a lot owner's assessment. *Id.* at 921. In that case, the indenture provided that "collection of assessments may be enforced by suits at law . . . against any [lot owner] on which a lien shall remain undischarged[.]" We concluded that a prior recording and an undischarged lien were prerequisites to bringing a suit to collect an assessment. *Id.* at 920. Because the subdivision failed to record the assessments before filing its action against the lot owner, the subdivision

failed to comply with its indenture and could not recover assessments in a suit against lot owners. *Id.* at 921.

Here, Section 3.17 of the Indenture provided that "[a] written or printed notice . . . stating the amount of money required for general purposes . . . shall be served at least thirty (30) days before any payment under said notice shall be required to be made, upon each of said owners. . . ." Thus, thirty days' written notice was a prerequisite to Association's demand that Homeowner pay her assessment. At trial, Association provided the following evidence to establish it provided notice to Homeowner to satisfy Section 3.17's notice requirement: (1) Exhibit 3—a copy of the invoice sent to Homeowner documenting the assessment amount for 2012 and its payment due date; (2) Exhibit 4—an unpaid accounts report cataloguing Homeowner's unpaid assessments for billing periods from 2003 through 2010;[5] and (3) Ms. Kelly's testimony that Homeowner had delinquent assessments from 2003 through 2012. During Homeowner's cross–examination of Ms. Kelly, Ms. Kelly conceded that she did not have copies of the invoices from 2003 through 2011 that were mailed to Homeowner and that Exhibit 3 only reflected the assessment amount due for 2012.

The sole evidence in the record that Association provided Homeowner the required notice under Section 3.17 is Exhibit 3, a copy of the 2012 assessment invoice. Association offered no evidence that it provided Homeowner any notice of

---

4. Association erroneously contends that Homeowner does not contest that Association provided notice to Homeowner. In her brief, Homeowner asserts that "only one notice was introduced, when the time period of [Homeowner's] alleged delinquency covered a 10–year period. Thus, [Association] still failed to prove that the other *nine* required notices were even sent . . ." (emphasis in original).

5. Ms. Kelly testified that according to her records, Homeowner had unpaid assessments for billing periods of 2003 through 2012. However, the last delinquent date listed on Exhibit 4 is June 1, 2010.

assessments for years 2003 through 2011. Thus, Association failed to prove it followed the prescribed method for assessment collection under the Indenture for 2003 through 2011. *See Engel v. Carver*, 675 S.W.2d 434, 435 (Mo.App.E.D.1984). Accordingly, the trial court's judgment in favor of Association for Homeowner's unpaid assessments from 2003 through 2011 is not supported by competent and substantial evidence. *See The Manors at Village Green Condominium, Inc. v. Webb*, 341 S.W.3d 162, 165 (Mo.App.E.D.2011).

■■■ Association asserts that even if Association did not comply with the specific assessment procedure under the Indenture, Homeowner had an equitable obligation to pay assessments. Association did not raise an equitable claim in its petition or at trial. "The powers of a court of equity to adjudicate are broad but are limited to the claim for relief and issues made by the pleadings." *City of Greenwood v. Martin Marietta Materials, Inc.*, 311 S.W.3d 258, 264 (Mo.App.W.D.2010). Because Association did not make an equitable claim against Homeowner, it is not entitled to equitable relief on appeal. *See Reliance Bank v. Musselman*, 403 S.W.3d 147, 150 (Mo.App.E.D.2013). Further, the record establishes that Association is seeking from Homeowner assessments the Indenture authorized if Association had complied with its procedure for assessment collection. "Equitable relief may not be invoked to avoid or prevent enforcement of a contract simply because enforcement may work a hardship upon one of the parties." *Missouri Goodwill Indus., Inc. v. Johannsmeyer*, 901 S.W.2d 154, 158 (Mo.App.E.D.1995).

We reverse the trial court's judgment as it relates to unpaid assessments for years 2003 through 2011. Because we reverse the portion of the trial court's judgment in favor of Association and against Homeowner for unpaid assessments for 2003 through 2011, we address Homeowner's third, fourth, fifth, and sixth points to the extent that they pertain to the trial court's judgment in favor of Association for unpaid assessments for 2012 only.

■■■ In her third point on appeal, Homeowner asserts that the trial court erred in entering judgment in favor of Association for $5,856.50 for attorneys' fees because Association did not present evidence to support the amount of fees. Homeowner does not dispute that the Indenture permits the trial court to award attorneys' fees in connection with recovery of assessment payments. Nor does she contest that the amount of attorneys' fees was unreasonable. Rather, Homeowner alleges that no substantial evidence supported the trial court's award because Exhibit 5 was not admitted into evidence.

The record reveals that at trial, Association requested submission of Exhibit 5 into evidence and Homeowner objected:

[Homeowner]: I'm going to object at this point. I've never—still haven't seen this document.

[Association]: Okay. Your Honor, we have an affidavit of attorney's fees to submit as Exhibit 5, with the total fees to date being just over $5,800, which I would like to submit to the Court.

[Homeowner]: Your Honor, I guess we're going to have to ask for cross-examination. I don't think this can be done via affidavit. I haven't had a chance to review it, look at it, analyze it. As she just testified, stated to the Court, it was just prepared. I haven't had an opportunity to look at this before—but I—

[Court]: Whose affidavit is it, Counsel?

[Association]: It's mine.

[Court]: All right. And I guess he wants to cross-examine you, which he can do at the end of the case.

At the close of Association's case, Association stated to the court that he wanted "to make sure that the exhibits all got entered. Were they all five of them?" The court responded that "the only one I show that has not been offered is No. 3." In its judgment, the trial court awarded to Association attorneys' fees in the amount of $5,856.50, which was the total amount for attorneys' fees listed in Exhibit 5.

■■■■ "[I]t is the objecting party's responsibility to [ensure] that a trial judge has heard and ruled on an objection." *Ziegler v. Dir. of Revenue*, 150 S.W.3d 145, 147 (Mo.App.E.D.2004). If an objecting party fails to do so, then nothing is preserved for review. *Id.* "Likewise, should the objecting party fail to insist on a ruling, the objection is deemed overruled and the evidence is in the record for consideration." *Id.* Here, because the trial court entered its judgment without specifically ruling on Homeowner's objection to Exhibit 5, and Homeowner has not shown that her counsel insisted on such a ruling, Homeowner's objections are deemed overruled and Exhibit 5 admitted. *See Id.* Because the trial court admitted Exhibit 5, Homeowner's argument that substantial evidence does not support an award of attorneys' fees is unavailing. However, in light of our resolution of Homeowner's first point on appeal reversing the judgment in favor of Association for assessments for years 2003 through 2011, we remand to the trial court to consider the proper amount of attorneys' fees.

■■■ In her fourth point on appeal, Homeowner asserts that the trial court

erred in awarding Association $501.50 for collection costs because: (1) no contractual basis supported the award; and (2) no competent or substantial evidence supported the amount. Section 3.17 of the Indenture provided that, when Association instituted legal proceedings to collect unpaid assessments, Association may "compel [unpaid assessments] with interest, costs of suit and attorney's fees attending the recovery of payment in default." Based on our review, we cannot say that the trial court's decision to award collection costs for 2012 was against the weight of the evidence. However, in light of our resolution of Homeowner's first point on appeal reversing the judgment in favor of Association for assessments for years 2003 through 2011, we remand to the trial court to consider the proper amount of collection costs for year 2012.[6]

■■■ In her fifth point on appeal, Homeowner asserts that, in light of Section 517.031, the trial court erred in denying her leave to file affirmative defenses. Section 517.031.2 provides that "[a]ffirmative defenses, counterclaims and cross claims shall be filed in writing not later than the return date and time of the summons unless leave to file the same at a later date is granted by the court." Section 517.031.3 enables a trial court to extend the time for filing any pleading for good cause. "Under the clear language of [Section] 517.031.2, a respondent is required to plead any affirmative defenses within the time allowed while the case [is] pending in the associate division." *Manor Square, Inc. v. Heartthrob of Kansas City, Inc.*, 854 S.W.2d 38, 42 (Mo.App.W.D. 1993). Where a defendant does not properly plead an affirmative defense, that defense is deemed to have been waived.

6. The unpaid assessments report for Homeowner, which appears to provide the basis for the amount of the trial court's collection costs award, provided an annual breakdown of costs incurred on each unpaid assessment.

*Smith v. Thomas,* 210 S.W.3d 241, 243 (Mo.App.W.D.2006).

Homeowner alleges she had good cause under Section 517.031 because her failure to timely file her answer and affirmative defenses was unintentional. More specifically, she contends that, on the day her motion to dismiss was overruled, she filed her motion for leave to file her answer and affirmative defenses but "inadvertently left the date on the Notice of Hearing" blank. Once the mistake was realized, she filed a notice of hearing.

Our review of the record reveals the following regarding Homeowner's motion for leave to file her answer and affirmative defenses: Association filed its petition against Homeowner on February 1, 2012. The trial court entered a default judgment against Homeowner on March 21, 2012. On April 23, 2012, the trial court entered an order setting aside its default judgment and giving Homeowner an additional thirty days to file her answer and affirmative defenses. On June 18, 2012, twenty-six days after the deadline set by the trial court in its order, Homeowner filed a motion for leave to file her answer and affirmative defenses. Almost a month later, Homeowner filed a notice of hearing, which the trial court held on July 30, 2012, one week before the bench-trial.

Homeowner does not explain why her failure to file her affirmative defenses within the time allowed by the trial court in its order to set aside its default judgment constitutes good cause. Rather, she asserts she inadvertently left blank the notice of hearing date on a motion filed out of time. Accordingly, we conclude the trial court did not abuse its discretion in denying Homeowner leave to file her answer and affirmative defenses out of time. *See Taylor,* 159 S.W.3d at 498; *Manor*

*Square, Inc.,* 854 S.W.2d at 42. Point denied.

 In her sixth point on appeal, Homeowner asserts that the trial court erred in entering its judgment because the trial court did not address all of Homeowner's properly requested findings of fact and conclusions of law as required under Rule 73.01. Rule 73.01(c) provides that "[t]he court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party.... All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." The provisions of Rule 73.01 are mandatory where a party properly requests findings on specific fact issues. *Lattier v. Lattier,* 857 S.W.2d 548, 549 (Mo.App.E.D.1993). However, the failure of a trial court to make such findings mandates reversal only when the trial court's failure to issue requested findings materially interferes with appellate review. *Id.* "If the record supports the judgment or if the court makes findings that substantially comply with a party's requests, the appellate court will affirm." *Valentine v. Valentine,* 400 S.W.3d 14, 19 (Mo.App.E.D.2013). Homeowner does not assert that the trial court's failure to address her requested findings of fact and conclusions of law materially interferes with our review, and we conclude that the record supports the judgment in favor of Association for unpaid assessments for the year 2012. Point denied.

### Attorneys' Fees on Appeal

 Association moved for attorneys' fees incurred defending post-trial motions and this appeal pursuant to our Local Rule 400.[7] We may award attorneys' fees on

---

7. Local Rule 400 states, in pertinent part, that

"[a]ny party claiming an amount due for at-

appeal "if they are based on a written agreement that is the subject of the issues presented on appeal." *SE Co–Op Service Co. v. Hampton,* 263 S.W.3d 689, 696 (Mo. App.S.D.2008). Here, Section 3.17 of the Indenture provided for recovery of "attorneys' fees attending the recovery of payment in default." Therefore, Association is entitled to reasonable attorneys' fees relating to its recovery of Homeowner's 2012 assessment.

 Although we have the "authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo.App.W.D. 2002).

Accordingly, on remand, the trial court should determine the amount of attorneys' fees and enter judgment accordingly.

### Conclusion

We affirm the judgment in favor of Association for unpaid assessments for 2012 and reverse the judgment in favor of Association for unpaid assessments for the years 2003 through 2011. We remand to the trial court for a reconsideration of the amount of attorneys' fees and collection costs related to Homeowner's unpaid assessments for 2012 and the amount of attorneys' fees on appeal consistent with our opinion and to enter judgment accordingly.

LISA S. VAN AMBURG, P.J., and GARY M. GAERTNER, JR., J., concur.

torney's fees on appeal pursuant to contract, statute or otherwise and which this court has

jurisdiction to consider, must do so before submission of the cause."