

# In the Missouri Court of Appeals Eastern District

DIVISION TWO

RICHARD C. LEHMAN AND
MICHELLE D. KOO,

    Respondents,

v.

AUTOMOTIVE INVESTMENTS, LLC,
DONALD M. DAVIS, AND
MICHAEL SHANAHAN, JR.,

    Appellants.

)   No. ED107864
)
)
)
)   Appeal from the Circuit Court of
)   St. Louis County
)   Cause No. 16SL-CC04425
)
)
)   Honorable Brian H. May
)
)
)   Filed: July 14, 2020

## OPINION

Michael Shanahan, Jr. ("Shanahan"), Donald M. Davis ("Davis"), and Automotive

Investments, LLC ("AI") (collectively, "Appellants") appeal the trial court's judgment entered in

favor of Richard C. Lehman ("Lehman") and Michelle D. Koo ("Koo") (collectively,

"Respondents"). Appellants raise seven points on appeal.[1] Both parties filed motions for

appellate attorney fees, which were taken with the case. We affirm the judgment of the trial

---

[1] Shanahan was the only appellant to file an appellant's brief or reply brief; Davis and AI adopted Shanahan's briefs as their own.

court.  Additionally, we grant Respondents' motion for attorney fees on appeal and remand to the trial court for the sole purpose of determining reasonable appellate attorney fees.

## BACKGROUND

AI is a limited liability company, co-founded in March of 2009, by Lehman and another member for the purpose of investing in automotive dealerships.  Davis was admitted as a member in May of 2009.  Shortly after AI was founded in 2009, it invested in Gateway Buick GMC, Inc. ("Gateway"; f/k/a Ken Behlmann Automotive Services, Inc.).  In 2012, Lehman acquired his co-founder's interest in AI so he and Davis were the only members.  Shanahan was admitted as a member in 2013, and Davis became "dealer operator" of Gateway, which entailed him managing the day-to-day business of the dealership.  In May of 2015, Lehman transferred his interest in AI to himself and Koo (his wife), as joint tenants by the entireties.

On or about August 11, 2015, the parties executed a Membership Interest Purchase and Redemption Agreement ("Purchase Agreement"), in which it was agreed Respondents would sell their interest in AI to Shanahan (making Shanahan and Davis AI's sole members) and AI would pay the amount of $4.8 million to Respondents.  The Purchase Agreement provided for AI to pay a lump sum of $1.35 million.  In addition, AI executed a Promissory Note ("Note") that set forth the terms of AI's payment of the $2.85 million balance.  Shanahan and Davis also executed an Unlimited Joint and Several Guaranty ("Guaranty"), in which Shanahan and Davis "jointly and severally and absolutely and unconditionally" guaranteed payment of the amounts agreed to under the Purchase Agreement and Note.

On November 29, 2016, after Appellants failed to make any payments, Respondents filed their petition asserting claims related to the Purchase Agreement, Note, and Guaranty, and subsequently filed their first amended petition on May 24, 2017.  In their first amended petition,

Respondents asserted AI had breached the Note (Count I), AI had breached the Purchase Agreement (Count II), and Shanahan and Davis had breached the Guaranty (Count III). In response, Appellants raised numerous affirmative defenses. Relevant to this appeal, Appellants argued they were not liable under the terms of the Purchase Agreement, Note, and Guaranty because the Purchase Agreement, which was incorporated in the Note and Guaranty, was "null and void *ab initio*" because the consent of General Motors, LLC ("GM") for the transaction had not been obtained before December 31, 2015, as required by Section 7 of the Purchase Agreement.

A bench trial was held on the matter on January 9, January 15, and January 30, 2019. It was undisputed Appellants failed to pay Respondents pursuant to the Purchase Agreement or Note; rather, the trial focused on Appellants' affirmative defenses why they were not liable for the agreed-upon amounts under the terms of the Purchase Agreement, Note, and Guaranty.

The trial court entered judgment in Respondents' favor on March 27, 2019, concluding AI had breached the Note and Purchase Agreement and Shanahan and Davis had breached the Guaranty. The court rejected Appellants' affirmative defense that the Purchase Agreement was null and void *ab initio* because GM's consent to the transaction was not obtained by December 31, 2015. Specifically, the court found it was Shanahan's and Davis' obligation under Section 7 to use "commercially reasonable efforts" to obtain GM's consent prior to the deadline and they failed to do so. As a result, the trial court concluded that, because it was Appellants' obligation to use commercially reasonable efforts to obtain GM's consent to the transaction, "they cannot now rely on their own breach as the basis to relieve them of further obligations." The court further concluded Shanahan and Davis had breached the terms of the Guaranty, in which they "jointly and severally and absolutely and unconditionally" guaranteed payment of the amounts

3

promised under the Purchase Agreement and Note and agreed that no act but full payment would alter their liability for the amounts. Thus, the court held Respondents were entitled to recover the full amount due pursuant to the terms of the Purchase Agreement and Note, as well as statutory and contractual interest. Respondents were also awarded attorney fees under the terms the Purchase Agreement, Note, and Guaranty.

This appeal follows.

## DISCUSSION

Appellants assert seven points on appeal. In sum, Appellants argue: the trial court erroneously declared the law in placing the burden of proof on Appellants to show they made commercially reasonable efforts to obtain GM's consent (Point One); the trial court's finding that Appellants did not make commercially reasonable efforts to obtain GM's consent was both unsupported by substantial evidence and against the weight of the evidence (Points Two and Three); the trial court's finding that Appellants, and not Lehman, were the first to breach the Purchase Agreement was unsupported by substantial evidence (Point Four); the trial court's finding that Appellants were estopped from arguing the Purchase Agreement was void was unsupported by substantial evidence (Point Five); and the trial court misapplied the law in excluding Davis' testimony on GM's approval process because of a lack of foundation and in excluding Shanahan's testimony on an attorney's statements to him regarding GM's consent because it was hearsay (Points Six and Seven). Appellants' Points One through Five are related, so we address those points collectively and thereafter address their Points Six and Seven.

4

Points One – Five: Appellants' Breach of the Purchase Agreement and Affirmative Defenses

*Standard of Review*

Generally, we will affirm the judgment of the trial court in a court-tried case unless the judgment is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Nicolazzi v. Bone,* 564 S.W.3d 364, 370 (Mo. App. E.D. 2018) (citing *Ivie v. Smith,* 439 S.W.3d 189, 198–99 (Mo. banc 2014)); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We view the evidence in the light most favorable to the judgment, accepting all evidence and inferences favorable to the judgment as true and disregarding all contrary evidence and inferences. *O'Gorman & Sandroni, P.C. v. Dodson,* 478 S.W.3d 539, 542 (Mo. App. E.D. 2015). "We defer to the trial court's judgment on contested issues of fact, but we review issues of law *de novo*." *Central Parking System of Mo., LLC v. Tucker Parking Holdings, LLC,* 519 S.W.3d 485, 493 (Mo. App. E.D. 2017). Ultimately, when reviewing an appeal of a court-tried case, we are primarily concerned with "the correctness of the result, not the route taken to reach it," and we will therefore not disturb a trial court's correct ruling even where the trial court may have provided a wrong or insufficient reason for it. *Id.*; *see also O'Gorman & Sandroni, P.C.,* 478 S.W.3d at 543.[2]

*Analysis*

On appeal, it is undisputed Appellants failed to comply with the contract and obtain GM's consent to the transfer of Respondents' interest by December 31, 2015. However, Appellants assert that it was somehow Respondents' responsibility to meet the burden of proof for their affirmative defense that AI, Gateway, Shanahan, and Davis used commercially

---

[2] The trial court arguably may have mischaracterized the evidence in its findings of fact as to whether some facts were or were not disputed, but those inaccuracies do not affect our conclusion in this case, as there was substantial evidence upon which the court could have decided the disputed facts as further discussed, herein.

5

reasonable efforts to obtain GM's consent and that Shanahan specifically did everything he personally could to do so. These arguments are wholly unpersuasive.

First, "[a]n affirmative defense seeks to defeat or avoid a plaintiff's cause of action, and alleges that even if plaintiff's petition is true, plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility." *Templeton v. Cambiano,* 558 S.W.3d 101, 104 (Mo. App. W.D. 2018) (internal quotations omitted). "Defendants carry the burden of proof on all affirmative defenses." *TA Realty Assocs. Fund V, L.P. v. NCNB 1500, Inc.,* 144 S.W.3d 343, 347 (Mo. App. E.D. 2004); *see also Black & Veatch Corp. v. Wellington Syndicate,* 302 S.W.3d 114, 127 (Mo. App. W.D. 2009).

Moreover, if the terms of a contract are "unequivocal, plain, and clear, the court is bound to enforce the contract as written." *HCI Investors, LLC v. Fox,* 412 S.W.3d 424, 440 (Mo. App. W.D. 2013) (quoting *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997)). "It is the most basic principle of contract law that parties are bound by the terms of the contracts they sign and courts will enforce contracts according to their plain meaning, unless induced by fraud, duress, or undue influence." *Smith v. Keystone Mut. Insur. Co.,* 579 S.W.3d 275, 280 (Mo. App. E.D. 2019) (quoting *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 349 (Mo. banc 2006)).

Section 5(a) of the Purchase Agreement clearly identifies Shanahan and Davis as the "Members" referenced within the Purchase Agreement, specifically stating, "Davis and Shanahan ('Members') both agree . . . ." Section 7 (entitled "Required Consents") then goes on to state:

> AI, Gateway, and the Members shall use commercially reasonable efforts to obtain any and all consents of third parties necessary for the effectiveness of the transactions contemplated hereby (the "Third Party Consents"), including without limitation the consent of General Motors, LLC, as required pursuant to that certain

Dealer Sales and Service Agreement 2010 Standard Provisions, on or before December 31, 2015. In the event that all Third Party Consents are not obtained on or before December 31, 2015, this Agreement shall be deemed to be null and void *ab initio*. . . .

At trial, Appellants asserted that their failure to obtain GM's consent by December 31, 2015, was an affirmative defense to Respondents' suit because such failure caused the entire transaction contemplated by the Purchase Agreement to be null and void *ab initio*, per Section 7 of the Purchase Agreement. However, the trial court specifically found that, "[a]side from relying on others to obtain GM's consent, neither Shanahan nor Davis presented any evidence that they, or their agents, made ***any*** efforts to obtain the consent of GM on or before December 31, 2015" (emphasis added).

This conduct contravenes the plain and unambiguous language of Section 7 of the Purchase Agreement, which unequivocally obligated Appellants to use commercially reasonable efforts to obtain GM's consent in order to invoke the provision's protection and deem the transaction null and void *ab initio* if such consent was not obtained by December 31, 2015. *See HCI Investors, LLC,* 412 S.W.3d at 440. Furthermore, Section 7 imposes absolutely no responsibility on Respondents. Appellants failed to meet their burden of proof for an affirmative defense as set forth in Section 7. *See TA Realty Assocs. Fund V, L.P.,* 144 S.W.3d at 347; *Black & Veatch Corp.,* 302 S.W.3d at 127. Merely showing GM's consent was not obtained is insufficient absent proof Appellants used commercially reasonable efforts to obtain that consent. Thus, Appellants attempt to rely on the benefit of this particular term without fulfilling their responsibility.

Shanahan essentially argues throughout the first, second, and third points on appeal that he should be personally protected because it was not proven he individually failed to use

commercially reasonable efforts to obtain GM's consent pursuant to Section 7 of the Purchase Agreement. However, Shanahan overlooks two key facts that defeat his claim.

First, Section 7 of the Purchase Agreement required AI, Gateway, Shanahan, and Davis *collectively* to use commercially reasonable efforts to obtain GM's consent. The testimony of both Davis and Shanahan is abundantly clear that no actions were actually taken to contact GM and obtain its consent to the transaction contemplated by the Purchase Agreement before December 31, 2015. Shanahan testified he could only rely upon Davis to obtain GM's consent because he did not have access to the GM portal, and that Davis assured him GM's consent would be obtained by the December 31, 2015 deadline.[3] Davis testified he told Shanahan that GM's consent would be obtained, but he just assumed Shanahan was already "approved" from when he previously became a member of AI, so he took no further action to obtain GM's consent by December 31, 2015. Shanahan's belief that his inability to access the GM portal—necessitating his reliance on Davis—somehow allows him to personally invoke the protection of Section 7 ignores the plain terms collectively obligating him, Davis, and AI.

Second, and relevant to Shanahan's argument that he may escape personal liability, is the fact that he is jointly and severally liable with Davis for the amounts to be paid to Respondents under the Purchase Agreement and Note pursuant to the Guaranty they executed, which is incorporated into the Purchase Agreement and Note.

Combined, these facts defeat Shanahan's argument that he could not be held liable in this case because he used "commercially reasonable efforts" by doing everything he personally could

---

[3] Although Shanahan also contends AI's attorney emailed he and Davis indicating GM had consented, review of that email shows such a contention is a striking mischaracterization. The subject email to which Shanahan directs our attention never mentions GM's consent or approval, and instead addresses the contractual structure of the transaction and how the Purchase Agreement, Note, and Guaranty interacted. At the end of the email, AI's attorney stated, "This will allow you to move forward with GM immediately."

8

by relying on Davis to obtain GM's consent. The collective failure of Shanahan and Davis, as the sole members of AI and in Davis' capacity as dealer operator of Gateway, to actively seek GM's consent by December 31, 2015, precludes Appellants from effectively asserting the Purchase Agreement was null and void *ab initio*. Therefore, AI breached the Purchase Agreement and Note by failing to pay the agreed-upon amounts to Respondents.

As a result of AI's breach of the Purchase Agreement and Note, Shanahan and Davis are jointly and severally liable to Respondents pursuant to the Guaranty they executed in conjunction with the Purchase Agreement and Note. This means either or both Davis and Shanahan could be held personally liable for the amounts promised if payment was not made to Respondents under the terms of the Purchase Agreement or Note. The fact that Davis did not follow through on obtaining GM's consent to the transaction (as he was *de facto* the only one who could do so) does not relieve Shanahan of liability. Thus, Shanahan is hoisted upon the petard of Davis' failure to obtain GM's consent. Consequently, Shanahan is still personally liable to Respondents.

In Point Four, Appellants argue they should not be held liable for breach of the Purchase Agreement in this case because Lehman was the first to breach. Specifically, Appellants contend Lehman breached Sections 4 and 10 of the Purchase Agreement by failing to obtain GM's consent to the transfer of his interest and pursuant to the Dealer Agreement that Lehman signed in 2009. This claim must also fail.

Lehman signed the Dealer Agreement, which requires AI to obtain GM's consent to future transfers of ownership interest, in his capacity as a member of AI. Thus, as is consistent with Section 7 of the Purchase Agreement, AI was obligated to obtain GM's consent to the transaction contemplated by the Purchase Agreement—not Lehman personally.

9

Further, Sections 4 (stating that Respondents would transfer their ownership interest "free and clear of any liens, security interests or encumbrances whatsoever (except those arising under this Agreement)") and 10 (requiring the parties to the Purchase Agreement "to immediately take all actions necessary or appropriate to implement all transactions contemplated hereunder, including without limitation obtaining any Third Party Consent") of the Purchase Agreement are general provisions. However, Section 7, which explicitly obligated AI, Gateway, Shanahan, and Davis—but not Respondents—to use commercially reasonable efforts to obtain GM's consent, is a specific provision governing the issue of who was required to obtain GM's consent. "When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them." *Fairmont/Monticello, LLC v. LXS Investments, Inc.,* 554 S.W.3d 478, 482 (Mo. App. E.D. 2018) (quoting *Five Star Quality Care-MO, L.L.C. v. Lawson,* 283 S.W.3d 811, 815 (Mo. App. W.D. 2009)). Therefore, pursuant to the specific provisions set forth in Section 7, Respondents did not breach Sections 4 and 10 of the Purchase Agreement.

Appellants' Points One, Two, Three, Four, and Five[4] are denied because Shanahan and Davis collectively failed to use commercially reasonable efforts to obtain GM's consent on or before December 31, 2015; nor did Respondents breach the Purchase Agreement.

Points Six and Seven: Admissibility of Davis' and Shanahan's Testimony on GM's Consent

*Standard of Review*

A trial court has considerable discretion in determining whether to admit or exclude proffered evidence, and we will not reverse the trial court's determinations on such absent an

---

[4] We decline to adopt Respondents' assertion that Point Five is dispositive of the other six points on appeal because we deny Appellants' first four points, thereby affirming the trial court's judgment regarding Appellants' affirmative defense that the Purchase Agreement was null and void *ab initio*. Thus, we need not address Point Five.

abuse of that discretion. *Whitmoor Realty, LLC v. Beckerle as Trustee of Delora A. Beckerle Living Trust Dated June 10, 1999,* 588 S.W.3d 573, 577–78 (Mo. App. E.D. 2019). "In reviewing for an abuse of discretion, we presume the trial court's ruling is correct, and reverse only when that ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. . . ." *Portfolio Recovery Assocs., LLC. v. Schultz,* 449 S.W.3d 427, 431 (Mo. App. E.D. 2014). Further, this court will not reverse a trial court's admission or exclusion of evidence unless such alleged error materially affected the merits of the action. *Whitmoor Realty, LLC,* 588 S.W.3d at 578; *Shallow v. Follwell,* 554 S.W.3d 878, 881 (Mo. banc 2018).

*Analysis*

Appellants assert the trial court made two erroneous evidentiary rulings: excluding Davis' testimony on GM's internal approval process based on lack of foundation and excluding Shanahan's testimony on what an attorney (who Appellants claim represented AI, Gateway, and Shanahan in the transaction at issue) told him about GM's consent being obtained because it was hearsay. Even assuming *arguendo* the testimony at issue is admissible, we find the testimony would not have materially affected the case's outcome. What Appellants claim this testimony would have shown (details on GM's approval process and what Shanahan allegedly thought and was aware of regarding GM's consent) does not prove facts showing Appellants did not breach the Purchase Agreement, Note, and Guaranty. Nor does it prove any affirmative defense applies, including that AI, Gateway, Shanahan, and Davis used commercially reasonable efforts to obtain GM's consent by December 31, 2015, because that evidence fails to demonstrate any action by Appellants to contact GM and obtain its consent. *See supra* Points One – Five, *Analysis*.

Appellants' Points Six and Seven are denied because the evidentiary errors alleged by Appellants do not materially affect the merits of the action. *See Whitmoor Realty, LLC,* 588 S.W.3d at 578; *Shallow,* 554 S.W.3d at 881.

Motions for Attorney Fees on Appeal

Both Shanahan and Respondents request attorney fees on appeal based upon the terms of the Purchase Agreement. Respondents also assert they are entitled to appellate attorney fees under the terms of the Note and Guaranty. Our court may award appellate attorney fees "if they are based on a written agreement that is the subject of the issues presented on appeal." *Jamestowne Homeowners Ass'n Trustees v. Jackson,* 417 S.W.3d 348, 359–60 (Mo. App. E.D. 2013) (internal citations omitted); *see also Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc.,* 300 S.W.3d 602, 614 (Mo. App. E.D. 2009).

The Purchase Agreement entitles the prevailing party in any dispute regarding the Purchase Agreement to recover all "fees, costs and expenses, including [attorney] fees, relating to such dispute" from each non-prevailing party. Therefore, as the prevailing party on appeal, Respondents are entitled to recover appellate attorney fees. They are also entitled, as holders of the Note, to attorney fees incurred in the course of collecting on the Note and pursuant to Section 4 of the Guaranty for attorney fees incurred in enforcing the Guaranty. Thus, we grant Respondents' motion for appellate attorney fees and deny Shanahan's request for such.

While we have the "authority to allow and fix the amount of [attorney] fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Jamestowne Homeowners Ass'n Trustees,* 417 S.W.3d at 360. We therefore remand to the trial court for the sole purpose of determining Respondents' reasonable appellate attorney fees.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court and remand for the trial court to determine Respondents' reasonable attorney fees on appeal.

Lisa P. Page, Judge

Philip M. Hess, P.J. and Kurt S. Odenwald, J., concur.